[No. S161008. Aug. 30, 2010.]

VILLAGE NORTHRIDGE HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

914

916

CounSel

Engstrom, Lipscomb & Lack, Jerry A. Ramsey, Brian J. Heffernan and Alexandra J. Thompson for Plaintiff and Appellant.

Sharon J. Arkin for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Robie & Matthai, James R. Robie, Kyle Kveton, Steven S. Fleischman; LHB Pacific Law Partners, Clarke B. Holland, Sandra E. Stone, Jenny J. Chu; Crandall, Wade & Lowe and Michael J. McGuire for Defendant and Respondent.

Greines, Martin, Stein & Richland, Robert A. Olson and Alana H. Rotter for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Chapman, Popik & White, Susan M. Popik and Carol D. Quackenbos for Personal Insurance Federation of California as Amicus Curiae on behalf of Defendant and Respondent.

Opinion

**CHIN, J.**—We granted review to determine whether an insured who suffered property damage in the 1994 Northridge, California, earthquake may settle a disputed insurance claim with its first party insurer, execute a full and complete release of the claim, keep the money the insurer paid in the claim settlement without rescinding the release, and then sue the same insurer for allegedly fraudulently inducing the insured to settle the claim for less than it was worth under the policy. Although the insured here signed a release and waiver of all future claims, it seeks to bypass the statutory and common law rules governing rescission of a release, and instead to take advantage of a more general contract rule that a party to a contract may elect to affirm the contract and sue for fraud damages. (See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 827–828, pp. 1200–1201.) Consistent with long-settled case law and the relevant state statutory scheme that specifically governs rescission of contracts, including releases, under Civil Code sections 1691 through 1693, we conclude that a release of a disputed claim, like the one here, does not permit a party to elect the remedy of a suit for damages

when the release itself bars that option.[1] Instead, the insured party to the release must follow the rules governing rescission of that release before suing the insurer for damages.

## FACTUAL AND PROCEDURAL BACKGROUND

The 1994 Northridge earthquake caused considerable damage to property that plaintiff Village Northridge Homeowners Association (Village Northridge) owned. Village Northridge filed a timely property damage claim with its insurer, State Farm Fire and Casualty Company (State Farm). According to declarations filed in the trial court, State Farm's policy limits for earthquake damage were $4,979,900, with a 10 percent deductible. State Farm made several payments to Village Northridge on the earthquake loss, totaling about $2,068,000, which included the deductible calculation. In 1996, and again in 1998, Village Northridge sought additional policy benefits based on the opinion of a public adjuster who recalculated the deductible amount under the State Farm policy after the insured found a different declarations page in storage. State Farm reinspected the property and concluded that some of the additional damage was earthquake related, while other damage was not. State Farm initially paid Village Northridge an additional $7,466.34.

In November 1999, although both parties continued to dispute the policy limits and the amount of money owed, they negotiated a compromise settlement of the claim, with State Farm paying an additional $1.5 million. Under the settlement, Village Northridge released State Farm from all known or unknown claims related in any way to Village Northridge's earthquake claim. In the release's first paragraph, Village Northridge specifically agreed to "refrain and forbear from commencing, instituting, or prosecuting any lawsuit, action, or any other proceeding against [State Farm] based on, arising out of, or in connection with any claims, actions, causes of action, charges, demands, contracts, covenants, liabilities, obligations, expenses . . . and damages that are released and discharged." Paragraph 1 also unconditionally released State Farm from "damages of every nature, kind, and description whatsoever" that "arise out of or are in any way related to the Earthquake Claim." In addition, Village Northridge waived any benefit it might derive under section 1542 (stating principally that a general release does not extend

---

[1] Civil Code section 1691 provides in relevant part: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Section 1693 modifies the timing requirement in ways we discuss further below.

All statutory references are to the Civil Code unless otherwise noted.

to unknown claims), including the right to assert those claims, "if any, which they do not know about or suspect that they may have and even those, if any, which they may not learn about or discover until after they sign" the release.[2]

The pertinent insurance regulations (Cal. Code Regs., tit. 10, §§ 2695.4, subd. (e)(2), 2695.7, subd. (h)) specifically permit an insurer to include a provision in release agreements requiring insureds to waive section 1542 claims, or those unknown to them at the time of settlement and release. Such waiver allows an insured to assume the risk that it may discover new damage claims in the future. In exchange, the insured receives consideration and settlement of the claims known at the time of the release. (See *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1053–1054 [37 Cal.Rptr.2d 501] [parties may expressly waive future § 1542 claims].) In late 2000, Village Northridge asked State Farm to reopen the claim. The insurer declined to do so.

In December 2001, after the Legislature revived insurance claims that the statute of limitations otherwise barred, Village Northridge sued State Farm for breach of contract and breach of the implied covenant of good faith and fair dealing.[3] The complaint alleged that State Farm had undervalued the earthquake loss to Village Northridge's property and had induced Village Northridge to forgo proper repairs and payment of sums owed under the policy. Village Northridge also alleged that it "was required to sign a release and did so under compulsion and with no other option afforded to secure partial benefits owed," and that it did not agree "that the partial payments provided fully compensated [Village Northridge] for the actual damages and loss sustained at Village Northridge's property. . . ." Throughout the litigation, Village Northridge insisted that it did not seek to rescind the settlement agreement and that it did not intend to do so. Instead, as noted, it wanted to bypass the rescission requirements to affirm the release and to seek additional damages.

State Farm filed a motion for summary judgment, contending that the release Village Northridge executed barred its lawsuit for additional coverage. In its opposition to the motion, Village Northridge claimed that its insurance policy provided coverage limits of $11,905,500, with a 10 percent deductible. Village Northridge alleged that in the course of adjusting its claim and

---

[2] Section 1542, which governs general releases, states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

[3] In January 2001, Code of Civil Procedure section 340.9 (added by Stats. 2000, ch. 1090, § 1) became effective and revived previously time-barred claims for damages arising out of the Northridge earthquake, as long as the insured had contacted the insurer before January 1, 2000, which is the case here.

inducing it to execute the release, State Farm misrepresented the policy limits to be only $4,979,900, with the same deductible. The trial court granted State Farm's summary judgment motion. The court concluded that State Farm had not procured the release agreement through undue influence or fraud, and that the release was therefore binding on the parties.

The Court of Appeal reversed the judgment, concluding there were triable issues of fact as to whether the release contained in the settlement agreement was enforceable. The Court of Appeal remanded the matter to the trial court, which granted State Farm's motion for judgment on the pleadings with leave to amend. The trial court observed that the complaint did not allege fraud in the inducement or rescission and that, under California law, Village Northridge "need[ed] to either rescind the agreement or affirm the agreement and sue for damages."[4]

Village Northridge then filed a second amended complaint that was substantially similar to the first. The complaint alleged that the $1.5 million additional settlement State Farm paid was grossly deficient and represented only a partial payment of an alleged total loss of $8 million. The complaint also stated that the court had the inherent power to set aside a release procured by fraud. Again, State Farm demurred to the complaint, asserting that Village Northridge "could not affirm the settlement agreement and simultaneously assert claims that were explicitly released in it." The trial court sustained the demurrer without leave to amend. The court observed that Village Northridge sought to affirm the settlement agreement and keep the money paid in the settlement without releasing its additional claims, and that it "can't have it both ways."

Village Northridge appealed, and the Court of Appeal again reversed the trial court judgment. The court distinguished the case from *Garcia v. California Truck Co.* (1920) 183 Cal. 767 [192 P. 708] (*Garcia*) and *Taylor v. Hopper* (1929) 207 Cal. 102 [276 P. 990] (*Taylor*), which hold that a plaintiff cannot avoid an allegedly fraudulently induced contract of release unless it rescinds the contract and restores the money it received as consideration. The court limited application of both cases to the personal injury context, concluding that neither applies in the insurance or contract contexts.

As we explain in greater detail below, the rules governing rescission of settlement release agreements require the parties to follow the statutory and common law rescission procedures before suing for damages.

---

[4] In its answer brief, Village Northridge claims that sections 1667 and 1668 apply. These sections generally govern contracts that are fraudulent and contrary to public policy; however, as the trial court observed, such contracts are not at issue in this case.

## DISCUSSION

" 'On review of the judgment of the Court of Appeal reversing the superior court's orders sustaining defendants' demurrers, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' " (*Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1162–1163 [8 Cal.Rptr.3d 259, 82 P.3d 286], quoting *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We begin with a discussion of the rules governing contracts and their release and rescission.

### A. *Rules for Rescission*

As noted above, Village Northridge alleges State Farm committed fraud in the inducement in the settlement and release process by misrepresenting policy limits.

■ The general contract rules that govern this case are as follows: If a party believes it has been fraudulently induced to enter into a contract, " ' "[i]n order to escape from its obligations the aggrieved party must rescind . . . ." ' " (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 [58 Cal.Rptr.2d 875, 926 P.2d 1061], italics omitted.) The party's rescission obligations depend on the type of fraud alleged. Our state distinguishes between fraud in the execution or inception of a contract, and fraud in the inducement of a contract. (*Ibid.*) If the fraud goes to the execution or inception of the contract, so that the promisors do not know what they are signing, the contract lacks mutual assent and is void. It thus " ' "may be disregarded without the necessity of rescission." ' " (*Ibid.*) " 'In the usual case of fraud, where the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable.' " (*Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1028 [225 Cal.Rptr. 895], italics omitted.) In that case, the party seeking to void the contract must rescind under our statutory and common law rules. Rescission requires that the aggrieved party provide the other party to the agreement with " 'prompt notice' " and an " 'offer to restore the consideration received, if any.' " (*Ibid.*)

■ The principal rule regarding rescission of a release contract that may have been induced by fraud dates back to the late 19th and early 20th centuries. The rule was first stated in section 1691 (enacted in 1872), and it is now embodied in the holdings of *Garcia, supra*, 183 Cal. 767, and *Taylor, supra*, 207 Cal. 102. As noted in footnote 1, *ante*, section 1691 requires the

party seeking rescission to give notice to the other party "as to whom he rescinds," and to restore all consideration or "everything of value which he has received" under the contract. The statute's language is clear. With certain exceptions discussed below, it generally requires that the rescinding party return any consideration received as a condition of rescission before judgment in the rescission action. As originally enacted, section 1691 did not make prelawsuit restoration an absolute condition of rescission, but instead required "the use of . . . reasonable diligence" to restore or offer to restore any consideration received. We thereafter recognized various specific equitable exceptions, including when, "without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration . . . ." (*Kelley v. Owens* (1898) 120 Cal. 502, 511 [52 P. 797].)

In *Garcia, supra*, 183 Cal. 767, a trucking company's horse struck the plaintiff, injuring him. After receiving a monetary settlement and signing a release as to all causes of action, the plaintiff claimed that the settlement was obtained through fraud and that he wished to pursue damages. (*Id.* at p. 768.) *Garcia* observed that the question on appeal was the effect to be given the release contract, "which, of course, unless avoided in some legitimate way, constitutes an insuperable bar to recovery in this action for damages for injuries caused by the negligence of defendant. At no time prior to the commencement of the action did plaintiff attempt to rescind this contract of release, and his complaint in this action for damage for the original tort was altogether silent regarding it. At no time has he restored or offered to restore to defendant any part of the consideration paid by defendant therefor, or attempted to show any reason why he should not be compelled to do this as a condition precedent to rescission." (*Id.* at p. 769.) The court held that the plaintiff could not avoid the release's terms unless he first rescinded the arguably voidable contract and restored the consideration he received in return for the settlement and release. Finding section 1691 "explicit on the subject of rescission" (*Garcia*, at p. 769), *Garcia* observed that the statute requires that, on deciding to rescind a contract, the plaintiff must "use . . . reasonable diligence to comply with certain specified rules" (*ibid.*), one of which is that he "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same . . . ." (§ 1691, subd. (b).) This action places the parties in the positions they occupied prior to the agreement. The court specifically stated that it was "aware of no good reason why [section 1691] is not as fully applicable to a contract of release of claim for damages for personal injuries as to any other contract." (*Garcia, supra*, 183 Cal. at pp. 769–770.) As noted, the plaintiff had not tried to show reasonable diligence to comply with the restoration requirement.

Nine years later, this court decided *Taylor*, in which the plaintiff alleged the defendants negligently ran over her with their automobile. (*Taylor*,

*supra*, 207 Cal. at p. 102.) The parties reached a compromise settlement, but the plaintiff subsequently claimed the settlement was fraudulently induced. (*Id.* at pp. 102–103.) In order to avoid the application of *Garcia* and section 1691, the plaintiff claimed she did not seek to rescind the compromise agreement, but rather wished to affirm it, to retain the money she received from it, and then to sue for fraud damages—as Village Northridge seeks to do here. (*Taylor*, at p. 103.) *Taylor* followed *Garcia*'s reasoning, and, in quoting that case, held that " '[w]here the claim is for unliquidated damages or where the settlement is made to adjust a matter in dispute, or where there is a controversy as to the amount owing, and the parties agree upon a sum that shall be paid in settlement, the amount so paid shall be returned if the party settled with seeks to avoid the settlement on the ground of fraud.' " (*Taylor, supra*, 207 Cal. at p. 105, quoting *Garcia, supra*, 183 Cal. at p. 772.) In sum, the plaintiff could not avoid the obligation to return the consideration by "affirm[ing]" the settlement agreement and seeking damages for fraud. (*Taylor, supra*, 207 Cal. at p. 103.)

Two decades later, this court held in *Carruth v. Fritch* (1950) 36 Cal.2d 426, 430–431 [224 P.2d 702] (*Carruth*), that *Garcia* and *Taylor* did not bar a rescission claim by a plaintiff who—unlike the plaintiff in *Garcia*—acknowledged the restoration requirement, but alleged that she could not satisfy that requirement because, after the defendants had paid her for her release, she had spent the money on medical expenses. (*Ibid.*) Because Village Northridge has disclaimed any interest in seeking rescission, *Carruth* is not applicable in this case. In part C. below, we discuss both *Carruth* and section 1693, a 1961 amendment to the rescission statutes that codified much of *Carruth*'s rule.

B. *Applying* Taylor *and* Garcia

According to the Court of Appeal, two general principles are involved in this case: the *"Garcia* principle" that a personal injury plaintiff cannot avoid a fraudulently induced release without rescinding it and restoring the consideration received, and the "more general" principle that a party who is fraudulently induced to execute a contract can either rescind the contract and restore the consideration, or can affirm the contract and recover damages for fraud. The Court of Appeal limited application of *Garcia* and *Taylor* to personal injury cases, and applied the more general rule for fraud actions that do not involve the rescission of a contract or release agreement. As we explain, the court concluded that Village Northridge may avoid the release in its settlement agreement, keep the settlement proceeds, and sue for fraud by affirming the agreement that it wishes in large part to invalidate.

The Court of Appeal relied on two California cases that applied this affirm-and-sue principle. The court initially cites *Denevi v. LGCC, LLC* (2004)

121 Cal.App.4th 1211, 1220 [18 Cal.Rptr.3d 276] (*Denevi*) for the proposition that a victim of fraud has the right to " 'affirm the contract, and simply sue for damages for the fraud.' " (Italics omitted.) In *Denevi*, the plaintiff held a contractual right to purchase a parcel of real property for $8 million. (*Id.* at p. 1215.) The plaintiff entered into an agreement with several investors to form a venture to purchase the property. Following a disagreement between the parties over the escrow account, the property owner sold the property to another party. (*Ibid.*) The plaintiff later filed both a derivative action against the seller on the venture group's behalf and a personal claim against his fellow investors in the venture group for, inter alia, fraud in failing to provide adequate funding to purchase the property. (*Id.* at p. 1216.)

In ruling on the personal fraud claim, the Court of Appeal observed that the plaintiff never elected to rescind the original venture contract and that, in any event, rescission "became impossible when the property reverted to the owner, who transferred it to a complete stranger." (*Denevi, supra,* 121 Cal.App.4th at p. 1221.) In short, the court recognized that it had no power to order return of the property to the plaintiff and that rescission was therefore impossible. (*Ibid.*) The court stated that the plaintiff, as an alleged fraud victim, may not be required to undo the transaction in its entirety when the fraud occurred at the moment the venture group's management induced the plaintiff to part with his purchase rights, i.e., at the inception or formation of the contract. (*Id.* at p. 1219.) The court reasoned: "[The plaintiff] has the right to '*retain the benefits of the contract . . .* , and make up in damages the loss suffered by the fraud. . . . [H]e *may affirm the contract, and simply sue for damages for the fraud.*' " (*Denevi, supra,* at p. 1220, quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 726, p. 825, some italics added by the *Denevi* court.)

*Denevi* does not apply here because it assumes the existence of a contract fully executed by both sides and affirmed *in its entirety, followed by* a suit for fraud. (*Denevi, supra,* 121 Cal.App.4th at pp. 1220–1221.) That case did not involve a settlement and release of all disputed claims, and a release was not the object of any agreement between the parties. In *Denevi*, because there was no settlement and release of all claims, there was simply no indication that the plaintiff "ever invoked any of the procedures generally reflecting a rescission." (*Id.* at p. 1220.) In sum, in contrast to the *Denevi* facts, the purpose of the settlement and release in this case was to "buy[] peace," i.e., freedom from the threat of suit in a case in which the damage amounts were disputed. The Court of Appeal reasoned that State Farm was not simply "buying peace," as in the release of a personal injury claim, but was also satisfying an underlying contractual obligation. Whether or not defendant's sole objective in this settlement was to buy peace, that end was part of the consideration defendant expected to receive as a result of the settlement and release between the parties. Indeed, the Court of Appeal acknowledges this is

so. Therefore, plaintiff does not seek to affirm the release in its entirety, nor can it assert with any merit that it does so.

■ The Court of Appeal next relied on *Sime v. Malouf* (1949) 95 Cal.App.2d 82 [213 P.2d 788] (*Sime*), which involved a sophisticated corporate conspiracy and complicated factual and procedural situation. *Sime* analyzed a release that was included in a sales agreement under which the defendants acquired the plaintiff's interest in a project. (*Id.* at pp. 108–109.) In contrast to the release signed by Village Northridge and State Farm, the release at issue in *Sime* was a general release that did not include unknown claims (*id.* at p. 110; see § 1542), and no monetary consideration was paid for the release. (*Sime, supra*, 95 Cal.App.2d at pp. 109–110.) *Sime* stated that restoration was not necessary where the plaintiff had a right, "independently of the release itself," to retain the money. (*Id.* at p. 111.) *Sime* clearly articulated the difference between cases involving fraud in a release over a disputed amount and fraud in inducing one to buy something: "In such cases [(*Garcia* and *Taylor*)] it is clear that the plaintiff must restore what he has received in settlement of the disputed claim before suing upon it. He cannot retain the benefits of the release and sue, for to sue would violate the terms of his bargain. To hold otherwise would frustrate the very purpose of the release and destroy its effectiveness as a favored device for eliminating litigation. Hence rescission is necessary[,] and may be effectively accomplished only by returning the entire consideration received, for if plaintiff should fail to establish his cause of action, he would not be entitled to retain anything. The rule in such circumstances appears to be well settled." (*Id.* at pp. 110–111.)

The *Sime* court also recognized that "[e]qually well established, however, is the exception to the rule: A restoration is not necessary, in order to avoid the bar of a release, where there is no question as to the right of the plaintiff, arising independently of the release itself, to retain what he received. [Citations.]" (*Sime, supra*, 95 Cal.App.2d at p. 111; see *id.* at pp. 111–112, construing *Montes v. Peck* (1931) 112 Cal.App. 333, 341 [296 P. 624], and cases involving fraud in the sale of property.) Other cases are in agreement. (See, e.g., *Stefanac v. Cranbrook Educational Community* (1990) 435 Mich. 155 [458 N.W.2d 56, 60] [" 'A compromise and release is not to be confused with the law of contract, in which equivalents are exchanged, for the very essence of a release is to avoid litigation, even at the expense of strict right.' "].)

■ Here, the additional $1.5 million State Farm paid to Village Northridge in exchange for the settlement and release of all claims is not wholly "independent[] of the release itself." (*Sime, supra*, 95 Cal.App.2d at p. 111.) The release was not included in a contract that had another purpose; it was the sole purpose of the settlement. Indeed, the underlying claim was

the subject of dispute. State Farm maintained that not all of the damage was earthquake related and that the amount of the benefits owed was less than the claim. The settlement was intended to resolve that dispute, and the release was intended to apply to it.

■ In a related argument, which the Court of Appeal accepted, Village Northridge relies on *Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 750 [192 P.2d 935], for the rule that a party has the option of affirming the settlement agreement and recovering fraud damages. However, this rule requires the affirming party " 'on his part [to] comply with the terms of the contract . . . .' " (*Ibid.*, quoting *Schmidt v. Mesmer* (1897) 116 Cal. 267, 270–271 [48 P. 54].) Here, Village Northridge seeks to affirm those parts of the agreement that benefit it, but to invalidate a major part of the agreement that benefits State Farm. Therefore, the "more general principle" in *Bagdasarian* does not apply.

■ As State Farm observes, *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141 [23 Cal.Rptr.3d 335], on which Village Northridge and the Court of Appeal also rely, is easily distinguished. The dispute in *Persson* was over the price the defendant had to pay to purchase the plaintiff's stock certificates. (*Id.* at pp. 1149–1150.) The court relied on its equitable power to set aside the contract, which it believed was procured by fraud. (*Id.* at p. 1156.) In *Persson*, the plaintiff was allowed to affirm a settlement agreement, keep the settlement money, and sue for damages based on fraud. (*Id.* at pp. 1152–1156.) *Persson*, however, was a case, like *Sime, supra*, 95 Cal.App.2d 82, in which the plaintiff was entitled to a portion of the money he received independent of the settlement. Village Northridge relies on *Persson* to claim that, because State Farm had an underlying contractual obligation not to misrepresent the terms of its policy, Village Northridge was entitled to payment for insured losses independent of the release it signed. As State Farm observes, however, in contrast to the parties in *Persson,* the parties here were settling a disputed claim, as the settlement agreement specifically recited. Indeed, even *Persson* recognized that *Garcia* controls whenever the release "was the sole object of the contract, for which the consideration was paid." (*Persson*, at pp. 1154–1155.)

## C. *Policy Considerations*

The Court of Appeal supported its conclusion that *Garcia, supra,* 183 Cal. 767, and *Taylor, supra,* 207 Cal. 102, do not apply to insurance settlements by reference to policy considerations articulated in a limited number of cases from other jurisdictions that apply common law principles in the absence of an operative statute similar to section 1691. (See, e.g., *Matsuura v. Alston & Bird* (9th Cir. 1999) 166 F.3d 1006, 1008, fn. 4

[applying Del. election of remedies law to a claim that settlement of products liability suits for property damage was fraudulently induced]; *DiSabatino v. United States Fidelity & Guaranty Co.* (D.Del. 1986) 635 F.Supp. 350, 352–353 [granting tort plaintiff election of remedies to stand on fraudulently induced release and proceed on fraud cause of action]; *Phipps v. Winneshiek County* (Iowa 1999) 593 N.W.2d 143, 146 ["election of remedies doctrine should generally be available to a defrauded party to a settlement agreement . . ."]; see also *Kordis v. Auto Owners Ins. Co.* (1945) 311 Mich. 247 [18 N.W.2d 811, 813] [no restitution or rescission necessary as a condition precedent to maintaining action for damages arising from false representation and deceit].) The above cited cases are inapposite, for they simply reject the *Garcia* and *Taylor* rescission rule and hold that, even in a personal injury case, a defrauded party may elect rescission or an independent action for damages.

More significantly, the California Legislature had the opportunity to overrule *Garcia* and *Taylor* when it amended section 1691 in 1961. It chose not to do so. As State Farm observes, the legislative history behind the 1961 amendments to the rescission statutes supports the continuing viability of *Garcia* and *Taylor.* Indeed, during its evaluation of the proposed amendments, the California Law Revision Commission (Commission) considered whether the rescission and restoration of consideration requirement was sound. (See Recommendation and Study Relating to Rescission of Contracts (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) pp. D-8 to D-14.) One proposal would have allowed the trial court first to determine the validity of the release. The proposed statute would have stated that if the settlement contract was found invalid, the consideration paid to the plaintiff would be set off against any judgment in the fraud action. (Recommendation and Study Relating to Rescission of Contracts, *supra*, at pp. D-8, D-29 [discussing a proposed, but not enacted, Code Civ. Proc. provision].)

The Commission was aware that some of the parties seeking to sue for fraud in the inducement might have spent the money received in the original settlement to mitigate their damages, making restoration nearly impossible in these cases. One case the Commission discussed was *Carruth, supra*, 36 Cal.2d 426, in which the court addressed the equitable concerns that eventually formed the basis for section 1693's relaxation of the timing for the restoration of consideration mandated by section 1691. In *Carruth*, the plaintiff suffered injuries in an automobile accident and sued the defendant owner of the automobile in which she was injured for damages. Under "pressure of financial need" the plaintiff eventually executed a settlement and release of her right to recover any damages in exchange for $2,000. She later asked the court to set aside the release and award damages to her, asserting that the defendants never intended to honor their promises to pay for her future medical expenses and lost income. She included in her complaint a

second cause of action for fraud in inducing her to sign the release. The defendants claimed that because the plaintiff did not return the $2,000 received in the settlement, she could not pursue her rescission claim, because restoration of the consideration for the release was a necessary prerequisite to maintaining the rescission action. (*Carruth*, at pp. 429–430.)

The court allowed the rescission lawsuit to proceed, concluding that the rule requiring "tender or return of consideration . . . is not inflexible." (*Carruth, supra*, 36 Cal.2d at p. 430.) The court observed that because the defendants knew that the plaintiff "would be obliged immediately to pay out the consideration for medical expenses incurred by reason of the alleged tort," and knew that she then would not be able to restore the original consideration received for her injuries, there would be "no legal reason for requiring [her] to restore the consideration" she received. (*Id.* at pp. 430–431.) Relying on several earlier cases, the court held that "[h]aving known that the entire amount was to be applied to payment of medical expenses and she was without means to repay it, neither the [defendants] nor their insurer is prejudiced by her failure to do so." (*Id.* at p. 431.)

The Legislature was aware of *Carruth* as it sought to promote a flexible approach toward the restoration requirement. Although the Legislature did not specifically adopt *Carruth*'s holding, it also clearly did not intend to repeal the case. (Recommendation and Study Relating to Rescission of Contracts, *supra*, at pp. D-34 to D-35.) Therefore, consistent with the rule against implied repeals, we find that *Carruth, supra*, 36 Cal.2d 426 remains good law, subject to certain modifications embodied in section 1693, as noted below. (See, e.g., *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1325 [57 Cal.Rptr.3d 644, 156 P.3d 1100].)

■ The Legislature eventually adopted the Commission's proposal for a new statute to address any unfairness that the rescinding parties might face if they were insolvent or without the funds to restore consideration prior to filing suit. The statute, section 1693, as adopted in 1961, states that "[a] party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment."[5] (§ 1693; see *Carruth, supra*, 36 Cal.2d at p. 430;

---

[5] Section 1693 narrowed the *Carruth* exception in one respect: where in *Carruth* we permitted the plaintiff to proceed without any assurances to the defendants, section 1693 now authorizes a court to make restoration of the original consideration a condition of any judgment. But it also expanded upon *Carruth* in another respect: the justification for postponing restoration is no longer confined to circumstances where a defendant has engaged

*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 913 [42 Cal.Rptr. 366] [imputing an offer of restoration from the filing of an action alleging both rescission and fraud].)[6] Thus, although the Legislature specifically rejected the "affirm and sue" principle adopted by several states, it also, through section 1693, permitted plaintiffs who are unable to restore the consideration received in their original settlements and releases to delay the restoration of consideration until final judgment consistent with equitable principles, including that defendants not be substantially prejudiced by the delay. Had Village Northridge sued for rescission of its release under the statutory scheme governing rescission, it may have had the opportunity to delay restoration of the consideration it received in settling the property damage matter. State Farm agreed in supplemental briefing and at oral argument that section 1693 may have allowed the trial court to postpone any restoration requirement until judgment in the case. Instead, Village Northridge proceeded under an "affirm and sue" trial strategy that is barred in this state under section 1691 and existing precedent. (*Taylor, supra,* 207 Cal. at p. 105; *Garcia, supra,* 183 Cal. at p. 773.)

### D. *Insurer's Alleged Quasi-fiduciary Duty to the Insured*

Village Northridge asserts that, as between insurer and insured, a quasi-fiduciary relationship exists as a matter of law. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147 [271 Cal.Rptr. 246].) It asks us to factor that relationship into our decision here. State Farm *is* in a legally recognized special relationship with plaintiff, and it has duties that clearly encompass forthright and affirmative disclosure of available policy limits. However, "[a]n insurer is not a fiduciary, and owes no obligation to consider the interests of its insured above its own." (*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 973 [135 Cal.Rptr.2d 718].)

As noted above, we see no need to impose a new rule that might or might not further the insured-insurer relationship. State Farm does not claim that a release exempts it from a potential fraud claim. Instead, it asserts only that if Village Northridge brings suit based on alleged fraud after entering into a valid settlement and release, it must comply with our rescission statutes, sections 1688 to 1693. In addition, the Legislature subjects the insurance

---

in the sort of intentional manipulation alleged in *Carruth,* as the focus has now been shifted to an inquiry into whether there has been substantial prejudice to a defendant.

[6] One case has taken a restrictive view of section 1693, concluding that a plaintiff's delay in restoring consideration alone is sufficient to demonstrate prejudice to the defendant. (*Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1535 [76 Cal.Rptr.3d 816] [failure to restore settlement payment and sue for fraud prejudicial as a matter of law because defendant "would . . . lose the sole benefit it had contracted for in the settlement" (italics omitted)].) We disapprove *Myerchin* to the extent it ignores section 1693's express grant of authority to courts to exercise their discretion in delaying restoration until judgment.

industry to strict and enforceable standards of conduct through laws against misrepresenting insurance policy limits and fraud in the inducement. (See, e.g., Ins. Code, § 790.03 et seq.)

### E. *The Law Favoring Settlement.*

" '[T]he law favors settlements.' " (*Bush v. Superior Court* (1992) 10 Cal.App.4th 1374, 1382 [13 Cal.Rptr.2d 382].) State Farm contends that if an insured can settle a disputed claim, keep the money paid, and then sue anyway without complying with our rescission statutes, no insurer would ever settle a disputed claim. Village Northridge asserts that a decision against it would hinder settlement, because the courts would be "tolerating misrepresentation of policy limits by precluding any remedy for the crime in instances where a release is involved." Village Northridge asks, "How is the policy favoring settlement furthered by refusing a remedy at law to victims of fraud in connection with a fraudulently induced settlement?" The answer is simple. The court is *not* refusing a legal remedy to victims of fraud, *because they still have the option of rescinding the contract and then suing for damages.* Village Northridge further contends that if the settlement process is to be viable, insureds must have a legal remedy for misrepresentation of policy limits. Rescission under sections 1688 to 1693 is such a remedy.

In addition, the Court of Appeal stated that "[t]he consequences of applying this principle [of allowing plaintiff to settle, keep the money paid, and then sue for fraud] are not dire," and so they will not deter settlement. In essence, the court reasons that the insurer needs only to avoid misrepresenting policy limits. The Court of Appeal "seriously doubt[s] insureds who settle their claims can be expected thereafter to assert groundless claims of misrepresentation of policy limits on a routine basis." Although we agree the consequences may not be "dire," especially if the holding is specifically limited to allowing a suit for fraudulent inducement by misrepresenting policy limits rather than applying to fraudulent inducement in general, this contention is beside the point. Such a claim, by itself, cannot justify the break from settled law that the Court of Appeal's holding would represent. The fact that the consequences may not be dire does not mean they will be desirable. A settlement agreement is considered presumptively valid, and plaintiffs are bound by an agreement until they actually rescind it. We cannot ignore the equities of contract law simply because the Court of Appeal deems its holding to be a narrow one that applies only to those few cases where a plaintiff alleges that its insurer misrepresented policy limits when settling a claim. We find that the established rule is more likely to favor settlements, particularly when the parties have the equitable safeguards available to them under section 1693 discussed above.

## CONCLUSION

To allow Village Northridge to settle with State Farm and sign a release, keep the money, and then sue its insurer for alleged fraud without rescinding the release under our statutory scheme (§§ 1688–1693) would violate the terms of the bargain and frustrate its purpose. It would also likely inhibit insurance companies' practice of using a release as a settlement device. The Court of Appeal justified its decision based on policy considerations enumerated in out-of-state and federal cases allowing affirmation and suit. However, California does not follow those cases, and *Garcia, supra,* 183 Cal. 767, and *Taylor, supra,* 207 Cal. 102, are controlling precedent in this situation. We see no reason to turn to other courts' decisions when our own statutory scheme is clear. The Legislature has created a fair and equitable remedy to address the alleged fraud problem: rescission of the release, followed by suit. When restoration is impossible because the settlement monies have been spent, the financially constrained parties can turn to section 1693 to delay restoration until judgment, unless the defendants can show substantial prejudice. Our statutory scheme therefore effectively ensures that plaintiffs who may have been defrauded in the settlement process will be allowed access to the courts. For the reasons stated, we reverse the Court of Appeal's judgment and remand the matter for reconsideration in light of the reasoning set forth above.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.