Filed 9/9/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM LITTLE, | B238137 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC395717) |
| DAVID PULLMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Mark Mooney, Judge. Affirmed.

David Pullman, in pro. per; and Lauren M. Greene, for Defendant and Appellant.

Law Office of Mitchel J. Ezer and Mitchel J. Ezer for Plaintiff and Respondent.

_____

In prior proceedings, the superior court denied defendant David Pullman's motion to compel arbitration under an arbitration clause in a 2005 agreement. We affirmed the ruling on the ground that a later agreement between the parties, which contained no arbitration provision, superseded the 2005 agreement. (*Little v. Pullman*, May 19, 2011, B221565 [nonpub. opn.].) Soon after our decision was filed, Pullman ventured unilaterally to rescind the later agreement. He then moved a second time to compel arbitration under the 2005 agreement, arguing rescission of the later agreement effectively reinstated the 2005 agreement. The trial court again denied the motion.

We conclude Pullman has not perfected a rescission of the later agreement and, even if he had, unilateral rescission of that agreement would not by itself reinstate the 2005 agreement. We therefore affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns a dispute over residual income rights once owned by the bankruptcy estate of Sherman A. Hemsley, a television and film actor popular for his portrayal of George Jefferson in the television show *The Jeffersons*. Residual income from Hemsley's work is paid to the Screen Actors Guild, which distributes the income to whoever owns the rights to it. When ownership is disputed the guild will either retain the money pending resolution of the dispute or, if no resolution is forthcoming, file an interpleader action. In this case, each side alleges the other has made false representations to the guild concerning ownership of the Hemsley residual rights, which has caused the guild to retain certain residuals.

1.     The Prior Lawsuit

In 2005, Pullman and plaintiff William J. Little entered into an agreement (the Original Agreement) pursuant to which they would jointly purchase from the Hemsley bankruptcy estate the right to receive from the Screen Actors Guild residual income resulting from Hemsley's work. The parties agreed that Pullman would pay Little $42,500 and Structured Asset Sales, Inc., Pullman's company,

2

would own the Hemsley residuals but pay 50 percent of the income to Little. They also agreed to arbitrate "any controversy or claim arising out of or relating to . . . any of the transactions or services contemplated" in the agreement.

A dispute arose, and on July 27, 2005, Little filed suit in Los Angeles Superior Court against Pullman and Structured Asset Sales (*Little v. Pullman* (Super. Ct. L.A. County, 2005, No. BC337234)), alleging the Original Agreement was illegal and seeking its rescission. Pullman moved to compel arbitration in that action but the motion was taken off calendar when developments in the Hemsley bankruptcy intervened. On September 27, 2006, Little amended his complaint to seek only dissolution of a joint venture he alleged had arisen from the Original Agreement, not rescission of the agreement itself. Pullman then renewed his motion to compel arbitration.

In 2007, Pullman, Little and Structured Asset Sales entered into a Settlement Agreement and Mutual Release (the Settlement Agreement) resolving their disputes over the Hemsley residuals. The Settlement Agreement required Little to return the $42,500 Pullman had paid him and dismiss his lawsuit in exchange for Pullman's release of all claims against Little and all of his "right, title and interest in and to the Sherman Hemsley residuals." Payments "already received" by Pullman and Little were to be retained by each of them.

Although the Settlement Agreement contained no direct reference to the Original Agreement, it provided: "This agreement expresses the entire agreement and understanding of the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments and understandings pertaining to the subject matter hereof." There was no arbitration provision.

On April 9, 2007, counsel for Little and Pullman agreed in a side letter that Little would cooperate in securing payment to Structured Asset Sales on residual checks currently held by Pullman—but as yet uncashed—by sending joint letters on behalf of their clients to the holders of funds represented by the checks,

3

advising them the funds had been assigned to Structured Asset Sales and requesting that they make payment on the checks.

In 2008, Pullman, despite having relinquished all "right, title and interest in and to the Sherman Hemsley residuals," informed the Screen Actors Guild he was claiming approximately $10,000 in Hemsley residuals the guild was currently holding. Over the course of several communications, Pullman demanded that the Screen Actors Guild not release the residuals to Little and represented that there was "no settlement whatsoever."

### 2. The Present Lawsuit

On August 4, 2008, Little sued Pullman for breach of contract and fraud, alleging Pullman interfered with the Hemsley royalty stream by informing the Screen Actors Guild there was no settlement and Little had no right to the Hemsley residuals. He sought damages and an accounting. On September 18, 2009, Pullman moved in the superior court to compel arbitration, contending that because the Settlement Agreement was entered into to resolve the parties' disputes under the Original Agreement, the present lawsuit effectively involved a dispute under the Original Agreement and was governed by that agreement's arbitration clause.

Little opposed the motion, contending inter alia that (1) the Original Agreement had never been formed and in any event had been declared illegal in the initial litigation,[1] (2) Pullman waived any right to arbitration through his excessive delay in bringing the motion to compel arbitration, and (3) the Settlement Agreement, which contained no arbitration provision, superseded and terminated the Original Agreement, including its arbitration provision.

---

[1] The original trial court apparently issued a ruling on Pullman's initial motion to compel arbitration even though the motion had been taken off calendar. It denied the motion on the ground that the object of the Original Agreement was to defraud the Hemsley bankruptcy trustee. It is not clear how the court reached this conclusion.

4

The trial court denied Pullman's motion to compel arbitration, and on May 19, 2011, we affirmed that ruling, holding that "[o]nce the Settlement Agreement ended the effectiveness of the Original Agreement's arbitration provision, the parties had no agreement to arbitrate any disputes at all. . . . By declining to include arbitration as a provision of their Settlement Agreement—the agreement that superseded the Original Agreement, rendering it aside as void and obsolete— they opted *not* to agree that they would resolve future controversies with arbitration." (*Little v. Pullman*, *supra*, B221565.)

3.     Post-Appeal Proceedings

On July 1, 2011, approximately six weeks after our decision in the prior appeal was filed, Pullman sent a notice of rescission of the Settlement Agreement to Little. The notice stated the following: "TAKE NOTICE that David Pullman and Structured Asset Sales, LLC hereby rescind the agreement titled Settlement Agreement and Mutual Release executed by William Little ("Little") on March 7, 2007 and executed by David Pullman and Structured Asset Sales, LLC (collectively "Pullman") on April 9, 2007 and including but not limited to the side letter dated April 9, 2007 between Little and Pullman. The grounds for rescission of this Agreement are the failure of consideration in accordance with California Civil Code section 1689(b)(2) and (b)(4), fraud in the inducement under California Civil Code section 1572, and failure of performance and or failure of consent or assent. Rescinding parties hereby tender any consideration received under the said agreement."

Pullman's "tender" consisted of a check in the amount of $42,500, which Pullman did not deliver but purportedly made available for pickup at his "company's and attorney['s]" office.

On August 5, 2011, Pullman filed a cross-complaint in this action for rescission of the Settlement Agreement and breach of contract. He alleged Little failed to perform his obligations under the agreement—particularly his obligation to release any claim to residuals being held by the Screen Actors Guild that had

5

been paid before the Settlement Agreement was entered into—and never intended to do so, as evidenced by his post-agreement conduct. Pullman alleged that after the parties entered into the Settlement Agreement, Little: (1) claimed ownership of Hemsley residuals being held by the Screen Actors Guild but belonging to Structured Asset Sales; (2) misused Structured Asset Sales's tax identification number; (3) committed tax fraud; (4) and "effectively" took the position in the instant lawsuit that the Settlement Agreement was rescinded and is void and the Original Agreement was illegal.

On August 31, 2011, Pullman filed in the superior court a motion to compel arbitration, arguing his rescission of the Settlement Agreement extinguished that agreement and reinstated the Original Agreement, along with its arbitration provision. In a declaration filed with the motion Pullman stated Little never intended to perform his obligations under the agreement, as evidenced by his refusal to seek payment to Structured Asset Sales on stale residuals checks it possessed. He argued these were "constructive payments" of "constructive monies" he had "constructively received." Pullman further argued that Little misused Structured Asset Sales's tax identification number, committed tax fraud, and maintained that the Original Agreement was illegal, all of which indicated he never intended to perform his obligations under the Settlement Agreement.

Little opposed the motion. He argued Pullman failed to effect rescission of the Settlement Agreement because he did not restore the $42,500 he had received from Little. Little also argued arbitration of disputes arising from the Original (2005) Agreement could not be ordered until a final judgment was entered in Pullman's favor on his cross-complaint for rescission of the Settlement (2007) Agreement.

The hearing was scheduled for December 13, 2011. On December 7, 2011, Pullman filed a second declaration, dated one day earlier, in which he stated he sent a check for $42,500 to Little by Federal Express, apparently on the same day as the declaration was made, i.e., December 6, 2011. A copy of the check was

6

attached to Pullman's declaration. Dated July 1, 2011, the check was drawn on TD Bank by the payor "DONALDSON LUFKIN JENRETTE INC [¶] Money Market." (It is not clear from the record what this entity is or how it is related to Pullman.) No address was given for the payor, and the comment line of the check bore five lines of small handwritten script stating, as best we can make out, the following: "Structured Asset Sales, LLC and David Pullman payment in full to effect the rescission of agreement dated and executed 3/7/07 by William Little and countersigned by David Pullman and Structured Asset Sales LLC 4/9/07."

Little rejected the tender and returned the check, informing Pullman he did not recognize it as payment. Pullman apparently then re-sent the check to Little, who again rejected it.

At the hearing on Pullman's motion to compel arbitration, Pullman argued his tender of the $42,500 to Little completed the rescission, extinguished the Settlement Agreement, and entitled him to arbitration under the Original Agreement. Little argued the Settlement Agreement had not been rescinded because Little had rejected Pullman's tender, made only one week earlier.[2] The trial court, having apparently not seen Pullman's December 7, 2011 declaration or the copy of the $42,500 check attached to it, said Pullman's representation of tender was "outside the evidence" presented for the hearing. At any rate, the court said, as Pullman had cross-complained for rescission, the rescission issue and its ramifications could be determined as part of the litigation in chief. It therefore denied the motion.

Pullman timely appealed.

## DISCUSSION

"'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract.

---

[2] Little's counsel apparently attempted to return the check to Pullman, who apparently refused to take it. The court said, "I'm not going— [¶] . . . [¶] –to play these games, who's touched the check, not touched the check."

7

[Citations.]'" (*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Investment Co*. (1998) 68 Cal.App.4th 83, 88.) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]" (*Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 972.) Courts will uphold the trial court's resolution of disputed facts if they are supported by substantial evidence. (*Nyulassy v. Lockheed Martin Corp*. (2004) 120 Cal.App.4th 1267, 1277.) Where no disputed evidence is considered by the trial court, we will review its arbitrability decision de novo. (*Ibid*.)

We held in the prior appeal that Pullman was not entitled to arbitration of the dispute over ownership of the Hemsley royalty stream because the arbitration provision in the Original Agreement had been superseded by the Settlement Agreement, which contained no similar provision. Pullman now contends he has rescinded the Settlement Agreement and is therefore entitled to arbitration under the Original Agreement.

The issues are: Did Pullman rescind the Arbitration Agreement? If he did, does unilateral rescission of that agreement permit him to invoke the arbitration provision of the Original Agreement absent a determination that the rescission was justified? Must the trial court decide whether Pullman was justified in rescinding the Settlement Agreement in the context of his motion to compel arbitration? And if the rescission is justified, does it resuscitate the Original Agreement's arbitration provision? The answers are no to the first three questions and, as to the last, maybe.

8

## A. Pullman failed to rescind the settlement agreement

A party that believes it has been fraudulently induced to enter into a contract may rescind.  (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 921.)  Rescission is accomplished by giving notice to the other party to the agreement and restoring or offering to restore everything of value received.  (Civ. Code, § 1691; *Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 503 [settlement agreement may be rescinded if the rescinding party returns benefits received under the agreement].)

Here, Pullman failed to return or offer to return to Little the $42,500 he received from Little as part of the Settlement Agreement.  Although he stated in his notice of rescission that he tendered "any consideration received" under the Settlement Agreement, his December 6, 2011 declaration clarified that the tender consisted of an undelivered check in the amount of $42,500, payable not on the order of Pullman or Structured Asset Sales, but on the order of a third party money market entity.  Furthermore, the payment was not unconditional, but stated it constituted "payment in full to effect the rescission" of the Settlement Agreement.

There are three problems with this tender.  First, Pullman did not offer to pay or deliver the $42,500, but merely made available for pick-up a check for $42,500.  Ordinarily, "[a]n offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property," is "equivalent to the actual production and tender of the money, instrument, or property."  (Code Civ. Proc., § 2074.)  But Pullman offered neither to pay Little $42,500 nor to deliver a written instrument for that amount.  He offered only to make the instrument—not the money—available to be picked up at an ambiguous location—"through [his] company's and attorney['s] law office."  This would have required Little to find out where the check was located and travel to that location to receive it.

Second, the tender was conditional on Little accepting that it constituted "payment in full to effect the rescission of agreement dated and executed 3/7/07 by William Little and countersigned by David Pullman and Structured Asset Sales

9

LLC 4/9/07." When a claim is disputed and a check tendered by the debtor in settlement of the claim contains the words "payment in full," acceptance of the check constitutes an accord and satisfaction of the claim. (Civ. Code, § 1526, subds. (a) & (c).) It is unclear exactly what Pullman meant by appending this condition to the check, but it could reasonably mean that by accepting the check Little waived any claim that the $42,500 did not constitute full payment or admitted the truth of Pullman's claim that the Settlement Agreement was procured by fraud.

Third, Little, in the end, rejected the check, which he was entitled to do. Although it is normal business practice to allow payment of a debt by check, a creditor who does not wish to be paid in that manner may refuse to accept the tender on the ground that it does not constitute a lawful offer of money. (Civ. Code, § 1501 [any objection to mode of payment must be made at the time of tender]; Code Civ. Proc., § 2076 [same]; *Noyes v. Habitation Resources, Inc.* (1975) 49 Cal.App.3d 910, 913.) If the creditor does so, the debtor must return with a conforming tender. (*Noyes v. Habitation Resources*, at p. 913.) On December 6, 2011, Little rejected the by then five-month-old check tendered by Pullman and gave a reason for doing so—he did not recognize a possibly stale check from an unknown entity as proper payment. Pullman was then obligated to make a conforming tender. He refused to do so, instead re-sending the same check to Little and refusing to take it back at the hearing.

Because Pullman failed to restore to Little the $42,500 he had received as part of the Settlement Agreement, his rescission of that agreement was ineffective. On that ground alone, the trial court's ruling is affirmed.

**B.     Unilateral rescission alone would not compel Little to arbitrate this dispute**

Because neither party disputes that Pullman has the ability to pay Little $42,500, we may assume he will do so and thereby effect rescission of the Settlement Agreement when this case is remanded. However, even if he does,

10

unilateral rescission will not by itself entitle him to arbitration under the Original Agreement.

Rescission extinguishes a contract and may be accomplished unilaterally by a party who alleges his or her consent to enter into the contract was obtained by fraud. (Civ. Code, §§ 1688, 1689, subd. (b)(1).) Once a contract has been rescinded it is void *ab initio*, as if it never existed. (*Scollan v. Government Employees Ins. Co.* (1963) 222 Cal.App.2d 181, 183; *Long v. Newlin* (1956) 144 Cal.App.2d 509, 513.) Here, Pullman's unilateral rescission of the Settlement Agreement, if he completes it, will mean the parties' dispute over the Hemsley royalty stream can no longer be considered settled.

But that is all it will mean. How the dispute will be resolved and whether either party is entitled to any particular relief, whether monetary, equitable or procedural, remains to be seen. Civil Code section 1692 provides in pertinent part that "[w]hen a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or

11

cross-complaint."[3]  In other words, although a party need not seek relief upon rescission if he does not want any—he can try to walk away—if he does want relief, as Pullman does here, he must bring an action to obtain it or assert the rescission by way of defense or cross-complaint.  In any such action, the trial court will determine not only whether rescission was effected but also whether it was justified, and thereafter grant appropriate relief.

Pullman argues the rescission was justified and he is entitled to procedural relief—arbitration—because his consent to enter into the Settlement Agreement was obtained by fraud.  That remains to be seen.  To order a party into arbitration the court must determine by a preponderance of evidence that the party agreed to arbitrate disputes.  (*Engalla v. Permanente Medical Group*, *supra*, 15 Cal.4th at p. 972 ["The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence"].)  Here, the only competent evidence before the trial court was that Little agreed to settle the Hemsley dispute *without* arbitration.

---

[3] Civil Code section 1692 provides:  "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint.  [¶]  If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances.  [¶]  A claim for damages is not inconsistent with a claim for relief based upon rescission.  The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.  [¶]  If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

Although Pullman stated in a declaration that Little never intended to honor the Settlement Agreement, i.e., never desired to extinguish the Original Agreement or supersede its arbitration provision, we again remind him that his allegations do not constitute evidence of another's intentions, even if made under penalty of perjury. In the prior appeal Pullman cited his own testimony that the parties did not intend to extinguish the Original Agreement. We informed him the cited testimony was "irrelevant to establish the parties' *mutual* intentions in entering into the Settlement Agreement, for it states only his own uncommunicated intentions. (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444 [inadmissible to testify as to another person's state of mind without personal knowledge thereof].)" (*Little v. Pullman*, *supra*, B221565, fn. 9.) Repetition makes the evidence no more admissible and the claim no more persuasive.

Pullman observes we previously held that the Settlement Agreement superseded the Original Agreement, rendering it void and obsolete. He argues now that the Settlement Agreement itself is void—assuming he rescinds it—the Original Agreement is automatically reinstated, and Little must arbitrate pursuant to its provisions. We disagree. The obsolescence of the Settlement Agreement does not answer the pertinent question: What happens next? Under Civil Code section 1692, an "action" happens next, in the course of which a trial court will determine who should obtain what relief.

In sum, it is true that the Settlement Agreement will become void when Pullman rescinds it. But unilateral rescission will establish only that Pullman wants to arbitrate the Hemsley dispute, not that Little does. To compel Little to arbitrate, Pullman must first prove that he, Pullman, is entitled to some relief upon rescission—at a minimum that he effected rescission of the Settlement Agreement and was justified in doing so. This will require more than a bare fraud allegation. He must then prove as a separate matter that the Original Agreement contains an

13

enforceable arbitration provision, an issue that has never been determined by any court.

## C. The trial court can, but need not, decide Pullman's entitlement to rescission in the context of a motion to compel arbitration

We asked for supplemental briefing on the question whether the trial court may enforce a rescission in the course of deciding a petition to compel arbitration. Both sides agree it may.[4] (See *Bianco v. Superior Court* (1968) 265 Cal.App.2d 126, 129 [to determine whether a rescinded arbitration agreement should be enforced the court must determine whether grounds existed for the rescission]; see *Drake v. Stein* (1953) 116 Cal.App.2d 779, 784 ["In any proceeding for the enforcement of a contract for an arbitration of a dispute arising under it, a claim that the contract is invalid or that it has been rescinded places the controversy on the conscience of the court which must then determine the equitable issues raised"], overruled on another ground by *Brink v. Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 580.)

We agree. "An action" for relief upon rescission may take the form of a motion to compel arbitration, as both are suits in equity seeking determination of contractual rights. If to determine whether an agreement to arbitrate exists it is necessary to determine whether rescission of that or any other agreement is justified, the trial court may make both determinations in the context of the motion to compel arbitration.

But it is not compelled to do so. It is beyond dispute that the court may control its processes so as to most efficiently and effectively safeguard judicial economy and administer substantial justice. To that end, the trial court may bifurcate proceedings and determine the order of presentation of evidence. Where, as here, a complaint or cross-complaint has been filed that seeks essentially the

---

[4] We grant Little's application for leave to file a respondent's supplemental brief and deny Pullman's motion to strike the brief.

same relief as is sought in a petition to compel arbitration, the court would be within its discretion to table the petition and adjudicate the complaint or cross-complaint first, or to merge them with the petition and adjudicate them all at the same time.

It is not clear that the parties during the proceedings below fully engaged the issue of whether Pullman was justified in rescinding the Settlement Agreement, as Little relied on lack of tender to defeat rescission and Pullman contended it was unnecessary for the court to determine whether rescission was justified. As discussed above, Pullman's motion was properly denied because the rescission was not yet complete. But even if it had been, Pullman would be entitled to no relief until the court deemed the rescission justified. Should rescission ultimately be effected and the matter be revisited—either by adjudication of Pullman's cross-complaint or by a rehearing of the petition to compel arbitration—the court would be within its discretion to hold a full evidentiary hearing, perhaps involving oral testimony as well as documentary evidence, to reach a final determination regarding the merits of Pullman's fraud allegations.

If at some point the trial court determines that Pullman completed the rescission and was justified in doing so and is entitled to some relief, it may then determine the merits of other issues raised by the parties but not yet addressed in substance, including whether the Original Agreement includes a valid agreement to arbitrate and whether Pullman has waived the right to seek arbitration.

**DISPOSITION**

The trial court's order denying Pullman's motion to compel arbitration is affirmed.  Little is to receive his costs on appeal.

CERTIFIED FOR PUBLICATION


                                        CHANEY, J.

We concur:


MALLANO, P. J.


JOHNSON, J.