Filed 9/19/19 Certified for Publication 10/11/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RON KOENIG,<br><br>     Plaintiff, Cross-defendant and Appellant,<br><br>     v.<br><br>WARNER UNIFIED SCHOOL DISTRICT,<br><br>     Defendant, Cross-complainant and Appellant. | D072463<br><br><br><br>(Super. Ct. No. 37-2015-00015380-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge. Reversed.

Law Offices of Leon J. Saad & Associates and Leon J. Saad for Plaintiff, Cross-defendant and Appellant.

Lozano Smith, Sloan R. Simmons and Kyle A. Raney for Defendant, Cross-complainant and Appellant.

The Government Code requires a contract between an employee and a school district to provide that, if the contract is terminated, the maximum cash settlement the

employee may receive is an amount equal to the monthly salary of the employee multiplied by the number of months left on the unexpired term of the contract, up to a maximum of 18 months. (Gov. Code, §§ 53260, subd. (a); 53263.)[1] Health benefits offered in connection with such a settlement are limited to the same time period, or until the employee finds other employment, whichever occurs first. (§ 53261.)

Ron Koenig was the superintendent and principal of the Warner Unified School District (the district). He and the district entered an agreement to terminate his employment one year before his employment agreement was due to expire. Under the termination agreement, Koenig agreed to release any potential claims against the district in exchange for a lump sum payment equivalent to the amount due during the balance of the term of his employment agreement, consistent with section 53260. The district also agreed to continue to pay health benefits for Koenig and his spouse "until Koenig reaches age 65 or until Medicare or similar government provided insurance coverage takes effect, whichever occurs first."

The district stopped paying Koenig's health benefits 22 months later. Koenig then sued to rescind the termination agreement and sought declaratory relief he was entitled to continued benefits pursuant to his underlying employment agreement, which provided that Koenig and his spouse would continue receiving health benefits, even after the term of the agreement expired.

---

[1] Unless otherwise specified, statutory citations are to the Government Code. Section 53260 was subsequently amended, but the amendment is not applicable here. (See fn. 4, *post*.)

2

After a bench trial, the trial court determined the district's promise in the termination agreement to pay health benefits until Koenig turned 65 violated section 53261, was unenforceable, and rendered the termination agreement void for lack of consideration. The trial court determined that Koenig was entitled to receive continued benefits under the underlying employment agreement, but found that agreement was ambiguous with respect to how long he was entitled to continue receiving such benefits. The trial court found the parties intended the district would provide health benefits until Koenig obtained coverage through his new employer. The trial court concluded neither party was entitled to damages or restitution and awarded Koenig costs as the prevailing party.

Both Koenig and the district appealed from the judgment entered after trial. Koenig contends the trial court properly determined the termination agreement was void but should have concluded he is entitled to continued health benefits until the age of 65. The district contends the trial court erred when it concluded the termination agreement was void; rather, the trial court should have severed the termination agreement's unenforceable promise to continue paying benefits, enforced the remainder of the termination agreement, and required Koenig to pay restitution for benefits paid beyond the term of the original agreement. We conclude the termination agreement's unlawful promise to pay health benefits in excess of the statutory maximum should have been severed to comply with sections 53260 and 53261, Koenig did not establish he is entitled to rescind the termination agreement, and the district is entitled to restitution for health

3

benefits paid beyond the statutory maximum.  We therefore reverse the judgment and direct that judgment be entered in favor of the district in the amount of $16,607.

FACTS

A.  *The Employment Agreement*

The district hired Koenig in 2003, first as a principal at three of the district's four schools, and subsequently as superintendent and principal of the entire district.  In December 2009, Koenig and the district entered into a four-year employment agreement.

Under this agreement, the district agreed to provide Koenig and his spouse "his choice of medical, dental, vision and long term disability insurance offered to [d]istrict teachers."  Under the heading, "Fringe Benefits, Professional Schedule and Vacation," section 8.C of the agreement stated:

> "The [s]uperintendent/[p]rincipal shall be entitled, at [d]istrict expense, to his choice of medical, dental, vision and long term disability insurance offered to [d]istrict teachers for himself and his spouse, if any.  Upon completion of the term of this [a]greement or, in the event of early termination of this [a]greement by the [d]istrict without cause (pursuant to [s]ection 12, below), the [s]uperintendent/[p]rincipal and his spouse, if any, will be entitled to continue medical, dental and vision insurance at [d]istrict expense until the [s]uperintendent/[p]rincipal reaches age 65 or until Medicare or similar government-provided insurance coverage takes effect, whichever occurs first."

Section 12 of the agreement, titled "Termination," specified the reasons for which Koenig could be terminated from employment for cause and stated the procedures for effectuating the termination.  This section further stated:

> Notwithstanding any other provisions of this [a]greement, the [b]oard, at its sole discretion, shall, upon giving ninety (90) days

4

written notice, have the option to terminate this [a]greement. If the [b]oard elects the option to terminate the [a]greement, it shall pay the [s]uperintendent, in one lump sum payment within ninety (90) days of giving written notice of termination, an amount equal to the salary for eighteen (18) months under the [a]greement, or the salary of the remainder of the term of the [a]greement if such remainder is less than eighteen (18) months . . . . In addition, the health insurance benefits will be maintained by the [d]istrict for the [s]uperintendent throughout the term of the [a]greement, unless the [s]uperintendent is provided with health insurance benefits under other employment."

B. *The Termination Agreement*

In 2012, shortly after Koenig disclosed a medical condition, the district placed him on paid leave and expressed interest in terminating his employment agreement.[2] The parties entered into a termination agreement which contemplated that the parties would terminate the employment agreement one year early—in December 2012. Koenig agreed to release any employment-related claims he might have against the district in exchange for a lump sum payment of $130,727.92, a sum "which represents the value of monthly salary, [retirement plan] contributions and monthly stipend for service on [a charter school management team], that would be due during the balance of the term of the [e]mployment [a]greement, and accrued but unused vacation." The termination agreement contemplated that "[t]his payment is intended to be within the provisions of Government Code section 53260."

The district also agreed to continue paying Koenig's health benefits. Specifically, the termination agreement provided, "[p]ursuant to [s]ection 8.C and [s]ection 12 of the [e]mployment [a]greement, Koenig and his spouse shall continue to receive medical,

---

[2]    The parties stipulated at trial that Koenig's termination was "not for cause."

5

dental, and vision insurance at the [d]istrict's expense [hereinafter "health benefits"], until Koenig reaches age 65 or until Medicare or similar government provided insurance coverage takes effect, whichever occurs first."

The termination agreement contained a severability clause that provided, "[i]f any provision of this [a]greement is held to be void, voidable, or unenforceable, the remaining portions of the [a]greement shall remain in full force and effect." The agreement further contemplated that, "[t]his [a]greement constitutes the entire agreement and understanding of the [p]arties," and that "[a]ll prior understandings, terms, or conditions . . . are superseded by this [a]greement." Finally, the agreement provided that "[e]ach party shall bear his/its own attorneys' fees and costs arising out of or related to the development of this [a]greement. Notwithstanding the foregoing, the prevailing [p]arty in any action brought to enforce the terms of this [a]greement may recover its reasonable costs and attorneys' fees expended in connection with such an action from the other [p]arty."

C. *Events Leading to Filing of Lawsuit*

Koenig obtained new employment with another school district in August 2014. In October of that year, he received notification that the district was cancelling his health benefits effective November 1. Koenig obtained health insurance through his then-current employer. This coverage continued through June 30, 2016, when he retired. Since then, he has been covered under a COBRA plan.

After submitting a written demand for reinstatement of health benefits, Koenig filed this action to rescind the termination agreement. The district cross-complained, arguing the termination agreement's promise to continue paying health benefits was void

6

and unenforceable under Government Code sections 53260 and 53261, and the payments made in excess of the statutory maximum should be returned as an impermissible gift of public funds in violation of the California Constitution, Article XVI, section 6. The district sought declaratory relief, reformation of the termination agreement to excise the unenforceable promise to provide continued benefits, and attorneys' fees under the reformed termination agreement.

D. *Trial*

The case proceeded to a bench trial where Koenig testified he considered the continuation of health benefits provision to be an "essential" provision in his employment agreement. He testified that completing work under the agreement was a "longevity requirement" on which the promise to continue paying health benefits was conditioned:

> "Q. Was there any longevity requirement for you as part of the [employment agreement] prior to receiving benefits?
>
> "A. Yes. I believe that the longevity requirement was going to be to complete the . . . employment agreement, and that would entail me being the superintendent and principal from 2009 until December 13th, 2013."

Koenig further testified the termination agreement's promise to continue providing health benefits was "essential or crucial," and he would not have signed the termination agreement without the health benefit provision. His understanding under the parties' termination agreement was that he and his spouse would continue receiving health insurance benefits until he turned 65.

Two former district board members also testified at trial. C. Magill testified that she was a district board member when Koenig was initially hired and was still on the

7

board when Koenig's termination agreement was negotiated. She testified that her understanding of Koenig's employment agreement was that he and his wife received health benefits under the agreement, and had he worked to the end of the contract, he would have continued to receive full benefits through the age of 65 or until he was offered other insurance. Magill further testified that her understanding of Koenig's termination agreement was that he and his wife were to receive full health benefits until they were 65 unless he obtained health benefits through another employer.

G. Doxey, who was a board member when Koenig was elevated to superintendent, testified he was not involved in negotiating the employment agreement. He testified the district decided to "buy out" Koenig's employment agreement and intended to pay him the full value on the remainder of that agreement. Doxey "specifically remember[ed]" the district agreed to "pay [Koenig's] benefits until he was reemployed."

E. *Judgment*

After trial and a round of supplemental briefing, the trial court issued a written statement of decision concluding the termination agreement was void because "part of the consideration for Koenig's termination"—the promise to continue paying health benefits until Koenig turned 65—"was unlawful." The trial court alternatively found Koenig was entitled to rescind the termination agreement under Civil Code section 1689, subdivision (b)(4) because there was a material failure of consideration, as the continued payment of health coverage was central to the termination agreement. The trial court found that the termination agreement's provision for continued health benefits could not be severed and the remainder of the contract enforced because doing so would be

8

inconsistent with the parties' intent that Koenig would continue to receive benefits, as evidenced by the witnesses' testimony at trial.

Having determined the termination agreement was void and unenforceable, the trial court concluded that Koenig must disgorge anything he received under that agreement unless he was entitled to receive it under the employment agreement. The court declared it "appears undisputed" that Koenig was entitled to the lump-sum payment under the employment agreement; the only dispute centered on the district's promise to continue paying for health benefits. The trial court found the employment agreement was ambiguous on this issue because section 8.C contemplated that, upon completion of the term of the agreement or in the event of early termination by the district without cause, Koenig and his spouse would be entitled to continued health benefits *until Koenig reached age 65* or government-provided insurance coverage took effect, while section 12 provided, in the event of early termination, "the health insurance benefits will be maintained by the [d]istrict for the [s]uperintendent throughout the term of the [a]greement, *unless* the [s]uperintendent is provided with health insurance benefits under other employment." (Italics added.) Faced with this conflict, the trial court determined that neither provision applied. Rather, the trial court found that "because the [t]ermination [a]greement is void, the [e]mployment [a]greement did not terminate 'before the end of the contract term'[;] it simply came to an end as a fact of time." The trial court further found that "Koenig did not *complete* the term of the [employment agreement] *and* the [d]istrict did not *terminate early without cause* pursuant to [s]ection 12 [of the employment agreement]. Instead, the parties simply *agreed* that

9

Koenig would end his term before the end of the contract." The trial court considered the testimony of Koenig and both board members and concluded that the parties intended the employment agreement to provide health insurance benefits until such benefits were provided under other employment. The trial court therefore concluded the district did not overpay when it provided benefits to Koenig through October 2014.[3] The trial court also concluded Koenig was not entitled to damages for underpayment of benefits. It found Koenig did not adequately prove his claim of damages and he did not request damages under his declaratory relief cause of action. Finally, the trial court declined to award attorney fees under the provision in the (void) termination agreement. The trial court entered judgment in Koenig's favor and awarded him costs, excluding attorney fees.

F. *Cross Appeals*

Both Koenig and the district appealed from the judgment. Koenig argues that, because the termination agreement is void, the employment agreement is revived and "must be deemed to have run [its] course." Koenig therefore contends he is entitled, pursuant to the revived employment agreement, to health benefits until he reaches the age of 65 or until Medicare or similar government-provided insurance takes effect, whichever occurs first. Koenig additionally argues the trial court should have awarded him damages for the amounts paid for COBRA coverage and for out-of-pocket premium payments under his complaint's prayer for "further relief."

---

[3]    Koenig obtained health coverage through his new employer effective November 2014.

10

The district, on the other hand, contends the trial court erred when it declined to sever the void provision relating to continued health benefits from the remainder of the termination agreement. The district argues the trial court should have severed just the portion of the agreement inconsistent with sections 53260 and 53261 and preserved or reformed the remainder of the terms to provide that Koenig was entitled to health benefits only through December 2013. The district alternatively argues that if the entire termination agreement is void, the same limitation of health benefits under sections 53260 and 53261 applies under the employment agreement. Under either theory, the district contends Koenig should make restitution for overpayment of benefits after December 2013.

## DISCUSSION

### I.

The trial court determined the termination agreement's provision promising continued health benefits until age 65 violated the statutory limitations on settlements imposed by sections 53260 and 53261. We agree.

The applicable version of section 53260 required that "[a]ll contracts of employment between an employee and a local agency employer shall include a provision which provides that regardless of the term of the contract, if the contract is terminated, the maximum cash settlement that an employee may receive shall be an amount equal to the monthly salary of the employee multiplied by the number of months left on the unexpired term of the contract. However, if the unexpired term of the contract is greater than 18 months, the maximum cash settlement shall be an amount equal to the monthly

11

salary of the employee multiplied by 18." (§ 53260, subd. (a); see also § 53263 ["local agency" includes "any district, school district, community college district, . . . or any instrumentality of any one or more of these agencies"].)[4]

Section 53261 provides that "[t]he cash settlement specified in [s]ection 53260 shall not include any other noncash items except health benefits, which may be continued for the same duration of time as covered in the settlement, pursuant to the same time limitations as provided in [s]ection 53260, or until the employee finds other employment, whichever occurs first."

This court construed the statutory restrictions of sections 53260 and 53261 in *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471 (*Page*) and concluded they applied to settlements upon termination of a local agency administrator's contract, regardless of the circumstances surrounding the termination. In that case, a taxpayer challenged a community college district's agreement with the college's former president to settle potential claims the president had against members of the district's board of trustees, contending the payments to the president in connection with the termination of her contract exceeded the cash and noncash limitations contained in sections 53260 and 53261. *Page* emphasized that section 53260 uses "unqualified language to limit 'settlement[s]' upon an employee's contract termination," and concluded, "the Legislature's purpose was to set strict limits on cash and 'noncash items' payable in

---

4      Section 53260 was subsequently amended such that, for employment contracts for a district superintendent of schools, the temporal maximum for cash settlements was reduced from 18 months to one year. (Stats. 2015, ch. 240, § 1, (Assem. Bill No. 215), eff. Jan. 1, 2016.) The parties agree the amended version is not applicable here.

12

settlements upon termination of a local agency administrator's contract, without regard for the circumstances existing at the time of termination, the reasons, if any, for termination, or the nature of the disputes between the parties. . . . If that employee and employer nevertheless elect to terminate employment in the face of those claims (or the employer unilaterally terminates the contract), the employee's cash settlement, if any, is capped at 18 months of salary as specified in section [53260], and noncash benefits are limited to health benefits as specified in section [53261]." (*Page*, at p. 492.)

Similarly, here, sections 53260 and 53261 clearly limit the cash settlement (i.e., monthly salary) and noncash benefits (i.e., health benefits) payable to Koenig under the termination agreement. Because the termination agreement was intended to settle the parties' disputes, and resulted in the early termination of Koenig's employment, it triggered the "strict limits on cash and 'noncash items' payable in settlements upon termination" without regard to the circumstances or reasons for Koenig's early termination or the nature of the parties' dispute. (*Page*, *supra*, 180 Cal.App.4th at p. 492.) Indeed, neither party disputes that the district's promise to continue paying health benefits until the age of 65 violates section 53261's prohibition on providing benefits beyond the term of the original employment agreement. Under the plain language of the statute and *Page*, this portion of the termination agreement—the continued benefits beyond the term of the original employment agreement—is unlawful. We next consider what effect this illegal provision has on the termination agreement.

13

II.

The trial court determined that the termination agreement's promise to pay continued health benefits in violation of sections 53260 and 53261 was not severable from the remainder of the agreement and concluded the entire termination agreement was void for illegality. We conclude the court erred.

Whether the termination agreement is capable of being severed is reviewed de novo pursuant to established rules governing contract interpretation. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [unless the interpretation of a written instrument turns upon the credibility of extrinsic evidence, it is a question of law that we review de novo].) If an agreement can be severed, the trial court has discretion to do so and we apply an abuse of discretion standard of review to that decision. (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 803 (*MKB*); see *Dotson v. Amgen, Inc*. (2010) 181 Cal.App.4th 975, 985-986 (*Dotson*) [applying abuse of discretion standard but noting that clear preference is to sever, particularly where "only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement"].)

The principles governing contract interpretation are well settled. " ' " [A] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' (Civ. Code, § 1643; see also *id*., § 3541.) Pursuant to this rule, we will not construe a contract in a manner that will render it unlawful if it reasonably can be construed in a manner which will uphold its validity." [Citation.]' [Citation.] A contract

14

is unlawful if it is '[c]ontrary to an express provision of law.'  (Civ. Code, § 1667, subd. 1.)  Unlawful contracts are considered void.  (Civ. Code, §§ 1598, 1599.)" (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1188.)

A contract must have a lawful object, and the consideration exchanged between the parties must also be lawful.  (Civ. Code, § 1596 [the object of a contract must be lawful when the contract is made]; *id.*, § 1607 [the consideration for a contract must be lawful].)  Although Civil Code section 1598 invalidates an entire contract when it "has but a single object, and such object is unlawful," Civil Code section 1599 states that if "a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Similarly, where a portion of the consideration promised for a single contractual object is unlawful, the entire contract is void.  (Civ. Code, § 1608 ["If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void."]; see *McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 344 [where the illegal consideration goes to the "whole of the promise," the entire contract is illegal].)  However, where the consideration is only partly illegal, the legal portion may be enforced if the contract is severable.  (*Keene v. Harling* (1964) 61 Cal.2d 318, 320; see *MKB*, *supra*, 184 Cal.App.4th at p. 805 [a contract that failed to allocate consideration between lawful and unlawful services is not void as a matter of law; the doctrine of severability may apply where the contract did not have a single unlawful object and the illegality did not so permeate the entire agreement as to render it void].)

15

Indeed, "[i]t has long been the rule in this state that ' "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the . . . law . . . [divides] according to common reason; and having made that void that is against law, lets the rest stand." ' " (*Keene*, at pp. 320-321.)

In deciding whether a contract is severable, " '[t]he overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance.' [Citation.] 'Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.' " (*Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 996; see *id.* at pp. 991, 998 [the doctrine of severability "is equitable and fact specific" and it "preserves and enforces any lawful portion of a parties' contract that feasibly may be severed"].)

"California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." (*Adair v. Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450; see *Dotson*, *supra*, 181 Cal.App.4th at p. 986 [" 'the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement' "].) Severance is favored in order "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—

16

particularly when there has been full or partial performance of the contract." (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 123-124 (*Armendariz*).)[5]

Applying these principles, we conclude the unlawful provision governing health benefits was capable of being severed from the remainder of the termination agreement and severance was clearly warranted here. The stated object of the termination agreement was to "compromis[e] and settl[e] any potential disputes" between the parties with respect to Koenig's employment. The parties agreed that Koenig's employment would end prior to the expiration of the term set by the underlying employment agreement. Koenig agreed to release any potential claims against the district in exchange for a lump-sum payment in excess of $130,000 that was "intended to be within the provisions of Government Code section 53260" and a promise to pay continued health benefits. The sole illegality, as explained *ante*, arose from the provision for continued payment of health benefits beyond the employment agreement's original December 2013 expiration date. (*Abramson v. Juniper Networks, Inc*. (2004) 115 Cal.App.4th 638, 666 ["One relevant factor in assessing severability is whether the agreement contains more than one objectionable term."], citing *Armendariz*, *supra*, 24 Cal.4th at p. 124.) This portion of the agreement is easily separated from the remaining, lawful, provisions and

---

5    The *Armendariz* court also identified the conservation of a contractual relationship between the parties as another reason for severing or restricting illegal terms rather than voiding the entire contract. (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) Because Koenig is no longer employed by the district, and there is no ongoing contractual relationship to preserve, this basis for favoring severance does not appear applicable here.

17

does not taint the agreement as a whole. (*McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 101-102 [single unconscionable provision did not make entire agreement permeated with unconscionability and was therefore severable].) Severance would further the interests of justice because it would allow Koenig to retain the lawful benefits to which he is entitled under the termination agreement, while preventing Koenig from obtaining an additional windfall in the form of health benefits past December 2013 which he clearly is not entitled to receive. (See *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 59 [where effect of invalid provision in written agreement was "unintended and indeed *unknown* to the parties, severing it from the agreement would not impose on either of them any undeserved benefit or detriment" and enforcing "the remainder of the clause . . . achieves the paramount purpose of their contractual relationship"].)

Severing the invalid provision to pay health benefits beyond the statutory maximum also is consistent with the parties' expressed intent. Section 18 of the agreement provides: "If any provision of this [a]greement is held to be void, voidable, or unenforceable, the remaining portions of the [a]greement shall remain in full force and effect." This clause "evidence[s] the parties' intent that, to the extent possible, the valid provisions of the [agreement] be given effect, even if some provision is found to be invalid or unlawful." (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1230.) We thus conclude that the portion of section 4 of the termination agreement that contravenes sections 53260 and 53261 inasmuch as it promises benefits "until Koenig reaches age 65 or until Medicare or similar government provided insurance coverage takes effect,"

18

should be severed from the termination agreement and the remainder of the agreement enforced.

We reject Koenig's arguments against severance. Koenig contends severance was not warranted because he would not have agreed to the termination agreement but for its promise to continue paying benefits.[6] Where an agreement is not ambiguous, however, the intent of the contracting parties is discerned from the contract itself. " 'The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. [Citation.] "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " (*Nelsen v. Legacy Partners Residential, Inc*. (2012) 207 Cal.App.4th 1115, 1129.) It is the parties' expressed objective intent, not their unexpressed subjective intent, that governs. (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47.) Thus, " 'extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was. . . . The agreement is the writing itself. . . . Parol evidence cannot . . . be admitted to show

_____

6      Throughout the litigation, Koenig emphasized that he would not have entered the termination agreement had it not provided for the continued benefits he was eligible to receive upon completion of the term of the employment agreement. He testified that, given his and his wife's health concerns, health benefits were his "primary concern," and he "[a]bsolutely" would not have signed the termination agreement had it not contained the promise to continue paying benefits. Both board members testified that they understood the termination agreement to mean that the district intended to continue paying Koenig's health benefits.

19

intention independent of an unambiguous written instrument.' " (*Wagner v. Columbia Pictures Industries, Inc*. (2007) 146 Cal.App.4th 586, 592.)  Here, the unambiguous agreement reflects that the unenforceable promise to pay continued benefits was only a portion of the consideration provided and the parties agreed that unenforceable provisions of the agreement should be severed.  We therefore reject Koenig's claim, which is not reflected in the agreement itself, that he would not have agreed to the termination agreement but for its promise of continued benefits after December 2013.

We also reject Koenig's argument that there is insufficient consideration to support the agreement absent the continued payment of health benefits.  The *lawful* consideration exchanged pursuant to the termination agreement included the $130,000 lump-sum payment and 12 months of paid health benefits—representing the maximum cash settlement permitted upon termination of Koenig's employment agreement.  (Gov. Code, §§ 53260, 53261.)  We find this consideration was legally sufficient to support the termination agreement.  (Civ. Code, § 1605 [consideration is any benefit given or detriment suffered by a person to induce another to make a promise].)

In sum, we conclude the unlawful portion of the termination agreement is severable, and the remaining provisions of the termination agreement are enforceable with the unlawful provision excised.  Having concluded that the termination agreement's unlawful promise to pay health benefits in excess of the statutory maximum should have

been severed to comply with sections 53260 and 53261, we next address Koenig's contention that he is entitled to rescind the termination agreement.[7]

### III.

Koenig sought to rescind the termination agreement pursuant to Civil Code section 1689, subdivision (b), which provides in relevant part:

> "A party to a contract may rescind the contract in the following cases:
>
> [¶] . . . [¶]
>
> "(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.
>
> [¶] . . . [¶]
>
> "(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.
>
> "(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault."
> (Civ. Code, § 1689, subd. (b)(2), (4) & (5).)

The trial court properly recognized that Koenig was not entitled to rescission under Civil Code section 1689, subdivision (b)(2) because any failure of consideration was not due to the district. Indeed, Koenig testified at trial he relied on his counsel's advice when entering the agreement, and the agreement states the agreement's language should not be construed strictly for or against either party. We agree with the trial court

---

7    Because we have concluded that the illegal benefits provision should be severed and the remainder of the termination agreement enforced, we decline to address the district's alternate contention on cross appeal, that the agreement should be reformed under Civil Code section 3399.

21

that the failure of consideration here was not the fault of either party, but was due to operation of law. This precludes Koenig from rescinding under subdivisions (b)(2) and (b)(5), which respectively require fault of the party not rescinding or parties not equally at fault.

The trial court determined that, even if the termination agreement were not void, "Koenig would have prevailed on his request for rescission" under subdivision (b)(4). We disagree. Subdivision (b)(4) applies where the consideration "fails in a material respect from any cause" before it is rendered to the party seeking rescission. (Civ. Code, § 1689, subd. (b)(4).) The remedy of rescission extinguishes the contract (Civ. Code, § 1688) and restores the parties to their former positions by requiring them to return whatever consideration they have received. (*Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959-960; Civ. Code, § 1691, subd. (b) [upon rescission, each party must restore to the other "everything of value which he has received from him under the contract"].)

Here, as already noted, the district paid Koenig $130,000, and paid Koenig health benefits throughout the duration of the employment agreement, including during the final year when Koenig had discontinued working for the district. Koenig argued in the trial court that this consideration failed because he "would have received the exact same salary, STRS contributions and stipend under the terms of the [e]mployment [a]greement." He claims "the promise of continued health benefits was the primary and material consideration for the [t]ermination [a]greement," and he "received no other consideration" under the termination agreement. This argument fails to acknowledge that

22

Koenig would not have been entitled to receive salary or benefits under the employment agreement had he not continued to work for the district, and Koenig admitted he discontinued working for the district when he entered into the termination agreement in December of 2012—one year before the term of his employment agreement expired. The employment agreement specified various powers and duties to be performed by the "[s]uperintendent/[p]rincipal" throughout the term of the agreement. Having failed to complete his duties for the duration of the employment agreement, Koenig would not have been entitled to the full salary, stipend, or retirement contributions he received under the termination agreement.[8] We therefore reject Koenig's claim that he was entitled to rescind the termination agreement because the consideration failed in a material respect before it was rendered to him.

Moreover, "[r]escission requires that the aggrieved party provide the other party to the agreement with ' "prompt notice" ' and an ' "offer to restore the consideration received, if any." ' " (*Village Northridge Homeowners Association v. State Farm Fire & Casualty Co*. (2010) 50 Cal.4th 913, 921; see Civ. Code, § 1691 [service of complaint deemed offer to restore benefits received].) Koenig has made no effort to return to the district the sizable payment he received under the termination agreement, nor does it

_____

[8]    The trial court acknowledged that, if the termination agreement were rescinded, Koenig would be required to restore to the district everything of value he received under it, and further acknowledged that Koenig received payment of $130,000. However, without a citation to the record or the law, the trial court remarked that it "appears undisputed that he would have received this compensation under the [e]mployment [a]greement." As discussed, because Koenig discontinued working for the district in December 2012, he would not have been entitled to that payment, absent the termination agreement.

appear he is willing to do so. He maintains he is entitled to that payment under the employment agreement, despite his failure to fully perform his duties thereunder. Koenig has failed to establish how he would be entitled to this payment absent the termination agreement. (See *Page*, *supra*, 180 Cal.App.4th at p. 491 [reviewing legislative history of Government Code sections 53260 and 53261, noting "local governments should not pay their former executives not to work"].) Koenig's failure to restore the consideration received under the termination agreement further precludes his rescission claim. (*Little v. Pullman* (2013) 219 Cal.App.4th 558, 566-567.)[9]

IV.

Having determined the termination agreement's promise to pay health benefits in excess of the statutory maximum should have been severed and the remainder of the agreement enforced in a manner that complies with sections 53260 and 53261, we conclude that Koenig was entitled to payment for health benefits only for the duration of the term of his original employment agreement—until December 2013—the maximum duration permitted under sections 53260 and 53261. Any payments made for health benefits by the district after December 2013 were made in excess of the statutory maximum, and the district is entitled to repayment of that amount under its first and second causes of action for unjust enrichment and impermissible gift of public funds, respectively. (See *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018)

---

[9]  Because we conclude Koenig is not entitled to rescind the termination agreement and revive the employment agreement, we decline to address Koenig's additional arguments regarding interpretation of the employment agreement or entitlement to additional damages.

29 Cal.App.5th 230, 238 ["one who is unjustly enriched at the expense of another is required to make restitution"]; *Page*, *supra*, 180 Cal.App.4th at p. 496 [settlement payments in excess of statutory maximums established by sections 53260 and 53261 are made "in violation of the gift clause"]; Cal. Const., art. XVI, § 6.)

At trial, the district established it paid $16,607 in benefits for the period from January 2014 through October 2014. Koenig does not dispute this. Thus, judgment should be entered in favor of the district in the amount of $16,607.

V.

The district contends, and we agree, that remand is required to allow the trial court to determine the district's entitlement to attorney fees under the termination agreement. We express no opinion as to whether the district is entitled to fees under the agreement or, if so, in what amount.

DISPOSITION

The judgment is reversed. Judgment shall be entered in favor of the district in the amount of $16,607, and the matter shall be remanded to the trial court to determine the district's entitlement to attorney fees under the termination agreement. The district is entitled to its costs on appeal.

GUERRERO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RON KOENIG, | D072463 |
| Plaintiff, Cross-defendant, and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00015380-CU-CO-CTL) |
| WARNER UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant, Cross-complainant, and Appellant. | |

THE COURT:

The opinion in this case filed September 19, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties

2