Filed 2/8/24  Piran v. Yamaha Motor Corporation USA CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSICA PIRAN, | |
| Plaintiff and Respondent, | G062198 |
| v. | (Super. Ct. No. 30-2022-01255364) |
| YAMAHA MOTOR CORPORATION, U.S.A. et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Gibson, Dunn & Crutcher, Theane Evangelis, Timothy W. Loose, Megan Cooney and Jordan Johnson for Defendants and Appellants.

Aegis Law Firm, Samuel A. Wong, Jessica L. Campbell and Ali S. Carlsen for Plaintiff and Respondent.

Defendants Yamaha Motor Corporation, U.S.A. and Yamaha Motor Finance Corporation, U.S.A. (collectively referred to in the singular as Yamaha) appeal from an order:  (1) denying Yamaha's motion to compel arbitration of plaintiff Jessica Piran's claims under Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), and (2) staying Piran's PAGA and class claims pending completion of the arbitration of Piran's individual claims.  Yamaha argues Piran's individual PAGA claim must be compelled to arbitration under the parties' arbitration agreement and her non-individual PAGA claims must be dismissed for lack of standing.  Yamaha also contends the trial court failed to enforce the arbitration agreement according to its terms by allowing Piran's class claims to remain in the case pending completion of the arbitration.

We affirm in part and reverse in part.  We hold Piran's individual PAGA claim must be compelled to arbitration in accordance with the arbitration agreement under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906, 213 L.Ed.2d 179] (*Viking River*).  We determine the non-individual PAGA claims remain in the trial court under the arbitration agreement, and the trial court properly stayed them pending completion of the arbitration.  We find Piran maintains PAGA standing to pursue her non-individual PAGA claims in court under *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*).  Finally, we conclude Yamaha forfeited any arguments concerning the trial court's alleged error in staying the class claims, because Yamaha did not address how it was prejudiced by the stay.

FACTS

In July 2021, Piran began working for CoWorx Staffing Services (CoWorx), a business that provides temporary staffing for employers.  Piran signed a mutual arbitration agreement governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) (Agreement).  The Agreement provided the parties "agree all legal disputes and

2

claims between them shall be determined exclusively by final and binding arbitration," and the parties "voluntarily waive all rights to trial in court before a judge or jury on all Claims covered by this Agreement." It also contained a "Third Party Beneficiary" provision: "The parties expressly agree that [CoWorx's] clients are third party beneficiaries of this Agreement and entitled to enforce this Agreement for any Claim against them."

The Agreement defined "claims" as "all claims pertaining to or arising out of Employee's employment or other relationship with [CoWorx] (including application for or termination of employment or other relationship or assignment to a [CoWorx] client)." "[C]laims" also included "any claim arising out of or relating in any way to the services or work performed for or on behalf of any client of [CoWorx], to the fullest extent permitted by federal, state or local law," including claims for "wages, overtime, benefits, commissions, or other compensation or form of payment, or representation of such earnings" and claims for "violation of any federal, state, or local law, statute, regulation, or ordinance."

Paragraph 9 of the Agreement, entitled "Class and Collective Action Waiver," stated: "The arbitrator is prohibited from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, joint, or group action or awarding relief to a group of claimants or employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator. Should a court determine that this prohibition on class, collective, representative, joint, or group actions is invalid for any reason, the parties hereby waive any right to arbitration of the class, collective, representative, joint, or group action at issue and instead agree and stipulate that such claims will be heard only by a judge and not an arbitrator or jury, to the maximum extent

3

permitted by law.  Additionally, the parties agree that if a party brings an action that includes both claims subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims subject to arbitration are fully arbitrated.  The parties further agree that in such a situation, the arbitrator's decision on the claims subject to arbitration, including any determinations as to disputed factual or legal issues, shall be dispositive and entitled to full force and effect in any separate lawsuit on claims that by law are not subject to arbitration."

Paragraph 12 of the Agreement, entitled "California Employees," was specific to PAGA claims, stating:  "This provision applies to California employees only.  If any claim is made under [PAGA] and the representative action waiver stated above is deemed inapplicable or unenforceable with respect to the PAGA claim(s), the parties agree that any PAGA claim(s) will be bifurcated from all remaining claims and that all remaining claims will continue to be subject to mandatory and binding arbitration under this Agreement.  Additionally, the parties agree that all claims subject to arbitration must be adjudicated or otherwise resolved in arbitration before any PAGA claim(s) may be adjudicated."

Soon after Piran signed the Agreement, CoWorx placed Piran to work at Yamaha.  Piran worked at Yamaha until November 2021.

PROCEDURAL HISTORY

In April 2022, Piran filed a putative class action complaint against Yamaha, alleging eight causes of action for violating the Labor Code and Industrial Welfare Commission wage orders:  (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to provide accurate itemized wage statements; (6) failure to pay wages timely during employment; (7) failure to pay all wages due upon separation of employment; and

4

(8) violation of Business and Professions Code section 17200 et seq. Yamaha responded with a motion to compel all claims to individual arbitration under the Agreement and to stay the case pending completion of the arbitration.

Piran amended her complaint by adding a PAGA cause of action. In response, Yamaha filed an amended motion seeking to: (1) compel "all of [Piran's] claims in the . . . lawsuit to individual arbitration as required by the [Agreement]"; (2) dismiss Piran's "representative [PAGA] claims"; and (3) stay the case pending completion of the arbitration. Yamaha argued the Agreement contained a valid class and representative action waiver forcing Piran to arbitrate her claims on an individual basis; therefore, the trial court should compel Piran's claims to arbitration on an individual basis. Additionally, Yamaha asserted *Viking River* required arbitrating Piran's individual PAGA claim and dismissing her non-individual PAGA claims. It argued the trial court should stay the court proceedings until Piran's "individual claims are resolved in arbitration."

In a tentative ruling, the trial court granted the motion in part and denied it in part. The trial court ordered the individual claims in Piran's first eight causes of action to arbitration under the Agreement. But it determined the Agreement did "not authorize class arbitration" and stayed Piran's class claims pending completion of the arbitration. It also concluded Piran's PAGA claims were not subject to arbitration, citing *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), and stayed the PAGA claims pending completion of the arbitration.

After the hearing on the motion, the trial court confirmed its tentative ruling as its final order. Yamaha timely appealed.

During the pendency of this appeal, the California Supreme Court decided *Adolph*, *supra*, 14 Cal.5th 1104. We invited the parties to submit supplemental briefing regarding the effect of *Adolph* on this matter to which both parties filed responsive supplemental briefs.

5

## DISCUSSION

### I.

### STANDARD OF REVIEW

"'"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]"  [Citation.]  Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.'  [Citation.]

"Here, because the parties offered no extrinsic evidence, we review the court's order denying the motion to compel arbitration under the de novo standard of review."  (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227 (*Franco*).)

### II.

### PAGA CLAIMS

*A.  PAGA*

PAGA was enacted in 2004 to address two problems:  underenforcement of the Labor Code and "a shortage of government resources to pursue enforcement." (*Iskanian*, *supra*, 59 Cal.4th at pp. 378–379.)  The Legislature found it was "'in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.'"  (*Id.* at p. 379.)

6

"By its terms, PAGA authorizes any 'aggrieved employee' to initiate an action against a former employer 'on behalf of himself or herself and other current or former employees' to obtain civil penalties that previously could have been recovered only by the State in [a Labor and Workforce Development Agency] enforcement action." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1914], quoting Lab. Code, § 2699, subd. (a).) "'Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." (Lab. Code, § 2699, subd. (i).)'" (*Iskanian*, *supra*, 59 Cal.4th at p. 380.)

"A PAGA claim for civil penalties ""is fundamentally a law enforcement action."" [Citation.] 'The "government entity on whose behalf the plaintiff files suit is . . . the real party in interest."' [Citation.] PAGA's default civil penalties are thus calculated '"to punish the employer" for wrongdoing' [citation] and '"to deter violations"' [citation] rather than 'compensate employees for actual losses incurred' [citation]. . . . 'Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.'" (*Adolph*, *supra*, 14 Cal.5th at p. 1117.)

*B. PAGA Waivers and Splitting PAGA Claims:* Iskanian *and* Viking River

In *Iskanian*, the California Supreme Court found "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) The court held the FAA does not preempt this state's rule against PAGA waivers. (*Ibid.*) It also barred splitting PAGA claims into individual (Labor Code violations suffered by a plaintiff) and representative (Labor Code violations suffered by others) components, thereby prohibiting employers from seeking to arbitrate individual PAGA claims. (*Id.* at pp. 383–384.) "After *Iskanian*, it was settled law in

7

California that PAGA claims could not be compelled to arbitration, in whole or in part." (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1287 (*Piplack*).)

But the United States Supreme Court granted certiorari in *Viking River* to determine whether the FAA preempted *Iskanian*'s rule against PAGA waivers. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1913].) In *Viking River*, the court explained how in PAGA claims "representative" is used "in two distinct ways." (*Id.* at p. ___ [142 S.Ct. at p. 1916].) "In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies— of the State." (*Ibid.*) Accordingly, "'"*every* PAGA action is . . . representative'" and '[t]here is no individual component to a PAGA action,' [citation] because every PAGA claim is asserted in a representative capacity." (*Ibid.*) In the second sense, PAGA actions are "'representative' when they are predicated on code violations sustained by other employees." (*Ibid.*)

*Viking River* then explained *Iskanian*'s holding: "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum. But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at pp. 1916–1917].)

*Viking River* held the FAA does not preempt *Iskanian*'s principal rule barring predispute wholesale waivers of PAGA claims. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at pp. 1924–1925].) "In so doing, [*Viking River*] noted, among other things: '[T]he FAA does not require courts to enforce contractual waivers of substantive rights and remedies. The FAA's mandate is to enforce "*arbitration agreements*." [Citation.] And as we have described it, an arbitration agreement is "a specialized kind

8

of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." [Citations.] An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.'"" [Citation.] Thus, the court held 'wholesale waiver[s] of PAGA claims' remain invalid under *Iskanian*." (*Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 796 (*Gregg*).)

But *Viking River* concluded the FAA preempts *Iskanian*'s secondary rule prohibiting splitting "PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1924].) "This prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation] and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.'" (*Id.* at p. ___ [142 S.Ct. at p. 1923.) "Consequently, under *Viking River*, employers may enforce an agreement mandating arbitration of a plaintiff's individual PAGA claim, even if the agreement does not require arbitration of the plaintiff's nonindividual claims." (*Gregg*, *supra*, 89 Cal.App.5th at p. 796.)

*Viking River* also did not disturb another *Iskanian* rule: "*Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims). [Citations.] . . . '[W]hether or not an individual claim is permissible under the PAGA, a prohibition of *representative* [i.e., non-individual] claims frustrates the PAGA's objectives.' (*Iskanian*, at p. 384; see *ibid.* ['[W]here . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public

9

policy and unenforceable as a matter of state law.']).)" (*Adolph*, *supra*, 14 Cal.5th at pp. 1117–1118, citing *Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925].)

## C. The Parties' Agreement

### 1. The Individual PAGA Claim is Compelled to Arbitration

We begin our analysis by determining whether the Agreement compels arbitration of Piran's individual PAGA claim under *Viking River*. The Agreement defines "claims" as "any claim arising out of or relating in any way to the services or work performed for or on behalf of" Yamaha, including claims for "wages, overtime, benefits, commissions, or other compensation or form of payment, or representation of such earnings" and claims for "violation of any federal, state, or local law, statute, regulation, or ordinance." Piran's individual PAGA claim falls within that definition. It rests on Yamaha's alleged violations of the Labor Code and Industrial Welfare Commission wage orders, including the failure to pay wages, to provide meal and rest periods, to give accurate itemized wage statements, and to maintain accurate and complete wage records. (See, e.g., *Gregg*, *supra*, 89 Cal.App.5th at p. 800 [compelling an individual PAGA claim to arbitration where the arbitration agreement covered "'disputes arising out of or related to [Gregg's] relationship with [Uber], including termination of the relationship'"].) Therefore, under *Viking River*, Piran's individual PAGA claim must be compelled to arbitration.

### 2. The Non-Individual PAGA Claims Remain in Court

Next, we consider whether paragraph 9 of the Agreement, entitled "Class and Collective Action Waiver," is enforceable as to the non-individual PAGA claims. Piran asserts paragraph 9 precludes her from bringing her PAGA claims in any forum and is therefore an invalid waiver. Yamaha argues paragraph 9 is enforceable because it does not include a wholesale waiver of Piran's right to bring non-individual PAGA claims in any forum. We agree with Yamaha.

10

"General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . "The words of a contract are to be understood in their ordinary and popular sense."' [Citation.] Furthermore, '"[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)' [Citation.]

"'The "'"'". . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate."' [Citation.] 'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], '"there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'" [Citations.]'" [Citation.] "Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived."'"'"" (*Franco*, *supra*, 39 Cal.App.5th at p. 227.)

Although paragraph 9 is called "Class and Collective Action Waiver," nowhere in this provision do the parties agree to waive a right to bring a representative action in any forum. Paragraph 9 focuses on what can and cannot happen in arbitration. It states in relevant part, "The arbitrator is prohibited from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, joint, or group action or awarding relief to a group of claimants or employees in one proceeding, to the maximum extent permitted by law."

Understood in its ordinary and popular sense, paragraph 9 provides an arbitrator, during arbitration, can consider only individual claims; the arbitrator cannot hear representative actions, which include, under *Viking River*, non-individual PAGA claims. (See Civ. Code, § 1644 ["The words of a contract are to be understood in their ordinary and popular sense"].) This provision is consistent with long-standing principles

11

that "[p]arties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." (*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. ___, ___ [139 S.Ct. 1407, 1416].)

Piran argues paragraph 9 is an invalid waiver, because the word "representative" in the waiver includes the entire PAGA claim (both individual and non-individual components) and under paragraph 9 Piran is precluded from bringing her individual and non-individual PAGA claims in any forum. Piran contends that, because the waiver is invalid, the Agreement's PAGA provision in paragraph 12 is triggered. Pursuant to paragraph 12, if paragraph 9 is deemed unenforceable as to the PAGA claims, "any PAGA claim(s) will be bifurcated from all remaining claims and . . . all remaining claims will continue to be subject to mandatory and binding arbitration under this Agreement."

Piran's interpretation of "representative" may have been true under *Iskanian*, which prohibited splitting PAGA claims. But *Viking River* changed the rule. Under *Viking River*, a PAGA claim contains two components: an individual claim and representative (i.e., non-individual) claims. (*Piplack*, *supra*, 88 Cal.App.5th at p. 1288.) Since paragraph 9 is valid for the reasons discussed above, we need not consider the Agreement's PAGA provision in paragraph 12 and Piran's arguments regarding such therefore fail.

Additionally, we note paragraph 9 of the Agreement is distinguishable from the typical invalid PAGA waiver, in which parties agree they will not bring any representative actions in any forum. For example, in *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 645, the waiver stated, "You and [the company] may not assert any class action, collective action, or representative action claims in any arbitration pursuant to the Agreement or in any other forum." (Boldface omitted.) The court held

12

the waiver was invalid under *Iskanian* and *Viking River* because it required the employee to relinquish the right to bring non-individual PAGA claims. (*Id.* at pp. 649–650.)

Similarly, in *Gregg*, the waiver stated, "You and [Uber] agree not to bring a representative action on behalf of others under [PAGA] in any court or in arbitration." (*Gregg*, *supra*, 89 Cal.App.5th at p. 793.) The waiver also provided, "[F]or any claim brought on a private attorney general basis . . . both you and [Uber] agree that any such dispute shall be resolved in arbitration on an individual basis only." (*Ibid.*) The court explained, under these provisions, the employee had to "forgo his statutory right to seek civil penalties for Labor Code violations committed against other employees, whether in court or in arbitration." (*Id.* at p. 797.) Because *Viking River* upheld *Iskanian*'s rule prohibiting waivers of representative standing to bring PAGA actions, the waiver in *Gregg* was invalid. (*Ibid.*)

In this case, paragraph 9 is valid and enforceable. It is not a wholesale waiver of representative actions, including non-individual PAGA claims, in any forum. Although Piran may be barred from bringing her non-individual PAGA claims to arbitration, these claims remain in the trial court. As Yamaha recognizes, nothing in the arbitration agreement precludes Piran from pursuing her non-individual PAGA claims in court.

3. The Trial Court Properly Stayed the Non-Individual PAGA Claims

Paragraph 9 of the Agreement requires staying the non-individual PAGA claims pending completion of the arbitration. It provides, "[T]he parties agree that if a party brings an action that includes both claims subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims subject to arbitration are fully arbitrated." This provision is consistent with statutory law. (See 9 U.S.C. § 3 ["upon any issue referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the

13

agreement"]; Code Civ. Proc., § 1281.4 [upon "order[ing] arbitration of a controversy which is an issue involved in an action," the court shall "stay the action"].) The trial court did not err in staying the non-individual PAGA claims pending completion of the arbitration of Piran's individual claims.

### III.

#### STANDING TO LITIGATE NON-INDIVIDUAL PAGA CLAIMS

Yamaha argues, once Piran's individual PAGA claim is compelled to arbitration, she loses standing to litigate her non-individual PAGA claims in court, and the trial court should dismiss Piran's non-individual PAGA claims. We disagree because the California Supreme Court rejected this argument in its recent decision in *Adolph*.

In *Viking River*, the court determined that, when an individual PAGA claim is compelled to arbitration, a plaintiff's remaining non-individual PAGA claims must be dismissed in court for lack of statutory standing. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925].) It reasoned: "PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. [Citation.] When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Ibid.*)

But "[b]ecause '[t]he highest court of each State . . . remains "the final arbiter of what is state law"'' [citation], [California courts] are not bound by the high court's interpretation of California law." (*Adolph*, *supra*, 14 Cal.5th at p. 1119, citing *Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925] (conc. opn. of Sotomayor, J.) ["Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word"].) The California Supreme Court considered

14

this issue of standing in *Adolph*, 14 Cal.5th at page 1114.  It concluded, "[W]here a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court."  (*Id.* at p. 1123.)

*Adolph* explained a plaintiff must be an "'aggrieved employee'" under Labor Code section 2699, subdivision (c), to have PAGA standing.  That is, "[t]he plaintiff must allege that he or she is (1) 'someone "who was employed by the alleged violator"' and (2) someone '"against whom one or more of the alleged violations was committed."'"  (*Adolph*, *supra*, 14 Cal.5th at p. 1120.)  "[A] worker becomes an 'aggrieved employee' with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by his or her employer.  [Citations.] Standing under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum.  Arbitrating a PAGA plaintiff's individual claim does not nullify the fact of the violation or extinguish the plaintiff's status as an aggrieved employee."  (*Id.* at p. 1121.)

*Adolph* also rejected the argument "that bifurcating individual and non-individual components of a PAGA claim into arbitration and court proceedings has the effect of severing the two components into separate and distinct actions."  (*Adolph*, *supra*, 14 Cal.5th at p. 1124.)  It expounded:

"Nothing in PAGA or any other relevant statute suggests that arbitrating individual claims effects a severance.  When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action.  Code of Civil Procedure section 1281.4 states that upon 'order[ing] arbitration of a controversy which is an issue involved in an action,' the court should 'stay the action.'  It further provides that '[i]f the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only.'  Section 1281.4 does not contemplate that the compelled arbitration of an issue in controversy in the

15

action is a separate action. The statute makes clear that the cause remains one action, parts of which may be stayed pending completion of the arbitration. [Citation.]

"Indeed, it is a regular and accepted feature of litigation governed by the FAA that the arbitration of some issues does not sever those issues from the remainder of the lawsuit. The high court has long recognized that the FAA '*requires* piecemeal resolution [of related disputes in different forums] when necessary to give effect to an arbitration agreement.' [Citation.] In *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 217, the high court held that the FAA requires arbitrable claims to be compelled to arbitration 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' *Viking River* reiterated that parties may opt for arbitration procedures that depart from standard liberal rules of claim joinder, '[a]nd that is true even if bifurcated proceedings are an inevitable result.' [Citation.] When an action includes arbitrable and nonarbitrable components, the resulting bifurcated proceedings are not severed from one another; rather, the court may 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' (9 U.S.C. § 3; see Code Civ. Proc., § 1281.4.) In *McGill v Citibank, N.A.* (2017) 2 Cal.5th 945, 966, we explained that this principle extends to 'piecemeal litigation of "arbitrable and inarbitrable remedies derived from the same statutory claim.""" (*Adolph*, *supra*, 14 Cal.5th at pp. 1124–1125.)

Here, in her complaint, Piran alleged several Labor Code and Industrial Welfare Commission wage order violations while working for Yamaha. Her allegations that she suffered Labor Code violations by Yamaha "suffice to confer standing to bring a PAGA action." (*Adolph*, *supra*, 14 Cal.5th at p. 1121.) Therefore, she maintains her standing to pursue her non-individual PAGA claims in court, notwithstanding her individual PAGA claim being compelled to arbitration.

Yamaha argues the FAA preempts *Adolph*'s holding that "[w]hen an action includes arbitrable and nonarbitrable components, the resulting bifurcated proceedings

16

are not severed from one another." (*Adolph*, *supra*, 14 Cal.5th at p. 1125.) It contends this holding "revives the compulsory claim-joinder rule" that *Viking River* held the FAA preempted. But, as Yahama acknowledges, we are bound by *Adolph*'s holding, because the California Supreme Court considered this federal question and rejected it in *Adolph*. (See *Olson v. Lyft* (2020) 56 Cal.App.5th 862, 870 ["'On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently'"]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456.)

IV.

CLASS CLAIMS: YAMAHA HAS NOT SHOWN PREJUDICE

The parties did not dispute the validity of paragraph 9's class action "waiver" in the trial court. Therefore, that issue is not before us on appeal. (See *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["It is axiomatic that arguments not raised in the trial court are forfeited on appeal"].) However, Yamaha asks us to correct the trial court's purported error in staying the class claims pending completion of the arbitration. We decline to address Yamaha's arguments because Yamaha has not articulated how any alleged error by the trial court was prejudicial.

A trial court has broad discretion to control the "conduct of proceedings before it." (Code Civ. Proc., § 128, subd. (a)(3); *Little v. Pullman* (2013) 219 Cal.App.4th 558, 570 ["It is beyond dispute that the court may control its processes so as to most efficiently and effectively safeguard judicial economy and administer substantial justice"].) "'[A]n abuse of discretion results in reversible error only if it is *prejudicial*.'" (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378; see also Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) "Prejudice is not presumed. [Citation.] Rather, appellant has the burden of affirmatively demonstrating prejudice." (*Christ v. Schwartz*

17

(2016) 2 Cal.App.5th 440, 455.) We consider prejudice "when and only when the appellant has fulfilled his duty to tender a proper prejudice argument" by "spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) As Yamaha failed to present any arguments regarding prejudice, Yamaha has not met its burden on appeal.

## DISPOSITION

The trial court's order is affirmed in part and reversed in part. The trial court's order denying Yamaha's motion to compel arbitration as to Piran's individual PAGA claim is reversed, and the matter is remanded to the trial court to enter an order compelling Piran to arbitrate her individual PAGA claim. In all other respects, the order is affirmed.

In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


MOTOIKE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.


18